Patrick Steve SANCHEZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 03–98–00160–CR.

Court of Appeals of Texas,
Austin.

Dec. 17, 1998.

Before Justices POWERS, KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

Appellant Patrick Steve Sanchez was charged with the offense of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02(a)(1) (West 1994). Sanchez filed a motion to suppress evidence of stolen items, claiming they were seized in violation of his constitutional rights. Following a hearing at which both the arresting officer and appellant testified, the trial court overruled appellant's motion. Sanchez subsequently entered into a negotiated plea agreement with the State for a reduced theft charge and was assessed twenty-three months' confinement in a state jail facility. However, Sanchez reserved his right to appeal the trial court's

denial of his motion to suppress. After conducting a *de novo* review, we conclude that the trial court erred in overruling appellant's motion to suppress. We will reverse and remand the cause to the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In a single point of error, appellant claims the trial court abused its discretion in overruling his motion to suppress. At the suppression hearing, Lampasas County Sheriff's Deputy Mitchell Martin testified that he had received information from a confidential informant that Sanchez had been involved in several burglaries in the area and was currently in possession of some of the stolen property. Deputy Martin went to Sanchez's residence without a warrant and requested permission to search the residence and surrounding area. Sanchez refused to sign a search consent form, but gave the deputy his verbal consent to search the residence. In Sanchez's presence, the deputy noticed some kitchen flatware with a distinctive pattern and some other items that matched the description of property reported stolen from the home of Glen Oliver. Deputy Martin did not take possession of any items at that time, but requested that appellant accompany him to the Sheriff's office for further questioning. Upon arriving at the Sheriff's office, Sanchez was read the *Miranda* warnings, questioned, and subsequently arrested for burglary of the Oliver residence. Deputy Martin's testimony indicates that the questioning took no longer than one hour.

After placing Sanchez in jail, Deputy Martin returned to Sanchez's residence and continued to search for stolen items. At the suppression hearing, Deputy Martin testified that he believed Sanchez's initial verbal consent to search extended to the second search because Sanchez had not revoked his consent. However, the deputy admitted that he did not inform Sanchez of his intent to return and search further, and acknowledged that he did not obtain a search warrant even though there was adequate time to do so and a judge available. While at Sanchez's residence the second time, Deputy Martin summoned Glen Oliver, who was able to identify some of the stolen property as his. The stolen property was seized by Deputy Martin and eventually used to negotiate the plea bargain agreement with Sanchez.

At the suppression hearing, Sanchez testified that he gave Deputy Martin verbal consent to search his residence the first time, but that he did not give consent for the second search that took place while he was in jail. Sanchez stated that he did not revoke his consent because the subject of another search did not come up, and that he did not even learn about the second search until "a couple of months later." Deputy Martin admitted that he did not ask Sanchez for his consent to conduct the second search.

The State's attorney acknowledged at the hearing that Sanchez's arrest may have been illegal, but argued that any illegality in the arrest should not taint the second search because of Sanchez's prior verbal consent. Sanchez's attorney argued that there were two separate searches, not a continuation of a search, and that Sanchez did not consent to the second warrantless search. The trial court overruled Sanchez's motion to suppress, and the case was placed on the jury docket. Sanchez then pleaded guilty to theft in exchange for a reduced jail sentence.

## DISCUSSION

The United States and Texas constitutions protect citizens from unreasonable searches and seizures. U.S. Const. Amend. IV; Tex. Const. art. I, § 9; *see Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Crim.App.1976). A warrantless search or seizure is *per se* unreasonable, subject to a few well-defined and limited exceptions. *See United States v. Karo,* 468 U.S. 705, 717, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). One of the specifically established exceptions to the warrant requirement is a search conducted with consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Kolb,* 532 S.W.2d at 89. The protections afforded by the Fourth Amendment and the Texas Constitution may be waived by an individual voluntarily consenting to a search. *See Paprskar v. State,* 484 S.W.2d 731, 737 (Tex.Crim.App.1972). The burden is on the State to show by clear and convincing

evidence that consent was freely given, and that the consent was positive and unequivocal. *See Roth v. State,* 917 S.W.2d 292, 300 (Tex.App.—Austin 1995, no pet.).

■ Following the lead of the United States Supreme Court, the Texas Court of Criminal Appeals has held that the amount of deference a reviewing court affords to a trial court's ruling on a mixed question of law and fact is determined by which judicial actor is in a better position to decide the issue. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex. Crim.App.1997) (citing *Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). If the issue involves the credibility of a witness, thereby making the evaluation of that witness's demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts. *See id.* (citing *Miller,* 474 U.S. at 114, 106 S.Ct. 445). However, if the issue is whether an officer had probable cause to seize a suspect under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See id.* *Guzman* echoed the United States Supreme Court's pronouncement that although great weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See id.* (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). "[T]he legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify, the legal principles." *Guzman,* 955 S.W.2d at 87 (quoting *Ornelas,* 517 U.S. at 697, 116 S.Ct. 1657). In an unpublished majority opinion, the Court of Criminal Appeals vacated and remanded our opinion in *Combest v. State,* 953 S.W.2d 453 (Tex.App.— Austin 1997), for reconsideration under *Guzman,* thereby expanding the *de novo* standard of appellate review to consent issues in the search and seizure context. *See Combest v. State,* No. 1527–97 (Tex.Crim.App. July 15, 1998) (not designated for publication). Following the Court of Criminal Appeals' holding in *Combest,* we now apply *de novo* review to the consent issue in this case, namely whether the trial court erred in determining that Sanchez's initial consent to search in his presence extended to the second search that took place after he was jailed.[1]

The State argues that the consent given by Sanchez for Deputy Martin's first search of his home was sufficient for the second search that took place approximately one hour later while Sanchez was in jail. We disagree. It is undisputed that Sanchez consented to the first search. However, the record shows that Sanchez was not told there would be a subsequent search, and he was not given the opportunity to revoke his previous consent because he had been placed in jail by Deputy Martin. The record also reflects that Sanchez refused to sign the consent form and only allowed Deputy Martin to search his residence while in his presence.

■ The instant case is distinguishable from other cases where courts have found that an initial voluntary consent to search extended or carried over to a subsequent search. In *Morrison v. State,* 508 S.W.2d 827 (Tex.Crim.App.1974), the court held that the original consent to search, given by a third party who exercised control over a suspect's residence, could carry over to a second search of the residence four hours later. *See id.* at 829. However, the court specifically reasoned that the consent carried over because the third party returned with the officer during the second search. *See id.* Thus, the presence at a second search of a party who gave consent for the initial search may imply consent to the second search. In the instant case, appellant did not accompany Deputy Martin on the second search because he had been jailed and did not know the

---

1. Although appellant's version of the facts differs from Deputy Martin's in that appellant claims he was taken to the sheriff's office twice, both before and after the consensual search, this discrepancy is unrelated to the consent issue in this case and both witnesses agree on the relevant facts pertaining to the second search. Because our analysis does not turn on the credibility of either witness, the discrepancy does not affect our decision to apply the *de novo* standard of review to this case in light of *Combest.*

search was occurring. Under such circumstances, it can hardly be said that Sanchez impliedly consented to the second search.

*Hawkins v. State*, 968 S.W.2d 382 (Tex. App.—Tyler 1997, pet. denied) is also distinguishable. At a suppression hearing in that case, police officers testified that they arrived at Hawkins's apartment in response to a telephone call from Hawkins's live-in girlfriend Minchew complaining that he had threatened her and her baby with a shotgun and would not let her retrieve the child from the apartment. The officers testified that when Minchew called, she was extremely upset and begged them to go with her to get her child. When the officers arrived, Minchew entered the apartment and they heard her arguing with Hawkins. At that point, the officers entered and observed Hawkins pointing an illegal sawed-off shotgun at them, which caused them to exit quickly. Another officer arrived and convinced Hawkins to release Minchew and the baby. Two hours later, the officers returned with reinforcements and negotiated with Hawkins to surrender. During the negotiations, some of the officers were able to see through an open window and observe Hawkins holding the illegal shotgun. After Hawkins surrendered, the officers entered the apartment and retrieved the shotgun. *See Hawkins*, 968 S.W.2d at 383–84.

The trial court denied Hawkins's motion to suppress evidence of the illegal shotgun. On appeal, the State argued that the consent given by Minchew for the first entry into the apartment carried over to the second entry after Hawkins surrendered. *See id.* at 384. The court of appeals noted that although Minchew did not accompany the officers on their return to the apartment to arrest Hawkins, there was testimony that she called for his arrest, informed the police that there was a warrant out for his arrest, and pressed charges against him. *See id.* at 385. According to the testimony of the police officers, she did nothing to revoke her consent to enter the apartment. Therefore, the court held that Minchew's consent carried over to the second entry into the apartment and that the trial court did not abuse its discretion in denying the motion to suppress. *See id.*

*Hawkins* is distinguishable from the present case. It was Hawkins's live-in girlfriend who gave consent for the original entry after Hawkins had threatened her with a shotgun. She and her baby were later released by Hawkins into police custody and taken to the police station. Absent a revocation of that consent, it was reasonable for the police officers to presume that her consent carried over to allow them to retrieve the illegal shotgun after they had negotiated Hawkins's surrender. In the present case, the original consent was given by appellant himself; Deputy Martin admitted that he did not ask appellant's girlfriend for her consent when he returned alone to conduct a second search of appellant's residence. There can be no implied continuation of consent, as in *Hawkins*, because here there was no comparable situation where one of two cohabitants requests the police to enter their residence to intervene in a violent domestic dispute.

This is also not a case in which the "exigent circumstances" exception to the warrant requirement could apply. In *Brown v. State*, 475 S.W.2d 938 (Tex.Crim.App.1971), the court extended the defendant's original consent to search to a second search twelve hours later when the officers returned with the defendant's uncle to obtain evidence that the defendant had murdered his parents in the home. After discussing the "exigent circumstances" exception, the court ruled it was not an illegal search and seizure because it occurred during an investigation into a pair of unsolved homicides that took place in a rural home approximately fifteen miles from the sheriff's office. *See id.* at 949–950. In the case at bar, Deputy Martin was not investigating a homicide. He admitted that he had time to procure a warrant. Appellant was in jail and unable to flee, and there was no evidence that the stolen property was about to be removed from his residence or destroyed. No exigent circumstances were present to justify the warrantless search.

Deputy Martin testified that he did not obtain consent for the second search of Sanchez's residence from either Sanchez or his girlfriend; instead, he placed Sanchez in jail and conducted the second search without a warrant and without consent. Based on

these facts, the State did not meet its burden of proving by clear and convincing evidence that appellant's initial verbal consent carried over to the second search during which the items at issue were seized. Therefore, the trial court erred in admitting evidence from the warrantless search. Sanchez's sole point of error is sustained.

## CONCLUSION

The judgment of the trial court is reversed and the cause is remanded.