**Sean MIDDLETON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–98–00964–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 16, 1999.

---

for possession of marihuana of more than 50 but less than 2000 pounds. Appellant pleaded guilty pursuant to a plea bargain with the State, and the trial court assessed appellant's punishment at three years imprisonment. In three points of error, appellant contends the trial court erred in denying his motion to suppress because his warrantless arrest and subsequent search of his luggage were unlawful under the state and federal constitutions and article 38.23, Texas Code of Criminal Procedure. We affirm.

The trial court decided appellant's motion to suppress on the basis of affidavits. The Texas Code of Criminal Procedure provides:

> When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court.

TEX.CODE CRIM. PROC. ANN. art. 28.01, § 1(6) (Vernon 1989 & Supp.1999).

In his affidavit, Officer Billy Corley stated he was monitoring outbound passengers at Terminal C, Bush Intercontinental Airport on April 8, 1998, when he observed appellant check two suitcases. The suitcases were new and had no personal identifiers on them. The claim checks indicated the suitcases were destined for Newark, which is considered a demand city for narcotics. Based on his training and experience, Corley knew it was common for drug couriers to use new luggage with no personal identification. Corley had "Bubba," a narcotics dog, check appellant's luggage, and Bubba alerted on both pieces of luggage indicating he smelled narcotics. Corley contacted Officer Dewayne Hartman, gave him a description of appellant, and took the suspected luggage into the jetway at gate I–1 and waited there with the luggage.

In his affidavit, Officer Dewayne Hartman stated he received the information

Don Lambright, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Panel consists of Justices ROBERTSON, CANNON, and LEE.[1]

## OPINION

BILL CANNON, Justice (Assigned).

Sean Middleton appeals from the denial by the trial court of his motion to suppress all the evidence in the charge against him

---

1. Justices Sam Robertson, Bill Cannon, and Norman Lee sitting by assignment.

from Corley and located appellant in the seating area for gate I–1. Hartman approached appellant, identified himself as a police officer, and asked to speak to appellant. Appellant told Hartman he was traveling to Newark, and showed Hartman his ticket which contained two baggage claim stubs that had the same baggage claim numbers as the ones on the two suitcases Corley was holding. Hartman asked appellant if he knew why a narcotics K–9 would alert to the scent of narcotics, and appellant said he did not know why that would have happened. Appellant and Hartman met with Corley in the jetway and Hartman asked appellant if the two bags were his, and he said they were his bags. Hartman asked appellant if he could look inside the suitcases, and appellant said he had no objections. Hartman advised appellant that he was not under any obligation to allow Hartman to look inside his two suitcases. Noting the suitcases were locked with a padlock, Hartman asked appellant for the key, and appellant told Hartman that the locks were not the ones he put on the bags. Hartman again asked appellant for the key, and he again said the locks were not his. With appellant's verbal consent, Hartman opened one of the suitcases and found it contained two bundles of marihuana. At that time, he advised appellant that he was under arrest for possession of marihuana, and read him his rights warnings.

In his affidavit, appellant states he was waiting for his flight to New Jersey when a man in plain clothes approached him and identified himself as a police officer. After asking appellant several questions about his residence, employment, and purpose of travel, he told appellant he suspected him of carrying drugs in his bags. Appellant went with the officer to his bags, and told the officer he could not tell if the bags were his. He told the officer that the locks on the bags were not his, and that he did not have a key to the locks. The officer then opened the bags without appellant's consent, oral or written.

At the hearing on appellant's motion to suppress, only the affidavits were considered as evidence by the trial court, and appellant's trial counsel argued that the only dispute was whether or not appellant consented to the search. Appellant's counsel argued that both officers approached appellant, took his tickets, and asked him why a narcotics dog would make a positive hit on his bags. This conduct by the police officers "conveyed ... the information that he wasn't going to be allowed to leave freely which I think negates or nullifies any consent that the State claims that he gave freely and voluntarily." The State argued that the search of appellant's bags was consensual, and the officers did not convey the impression that he was not free to leave.

The trial court overruled appellant's motion to suppress and entered written findings of fact and conclusions of law. In its findings of fact, the trial court accepted the versions of the events as stated by the officers in their affidavits. In its findings, the trial stated it accepted portions of appellant's affidavit as true and rejected other portions as self-serving and incredible. The trial court did not specify what portions of appellant's affidavit it deemed true and what portions it rejected. In its conclusions of law, the trial court found that Hartman had a reasonable suspicion to detain appellant based on the information furnished to him by Corley. Hartman did not convey any message to appellant that he was required to submit to a search, and appellant was free to leave. Appellant knowingly and voluntarily consented to the search. Upon discovery of the marihuana in appellant's suitcase, Hartman had probable cause to arrest appellant, search the other suitcase, and seize the marihuana.

In reviewing a trial court's ruling, an appellate court must determine the applicable standard of review. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). "The amount of deference a reviewing court affords to a trial court's ruling on a 'mixed question of law and·fact'

(such as the issue of probable cause) often is determined by which judicial actor is in a better position to decide the issue." *Id.* If the issue involves a witness' credibility and demeanor, compelling reasons exist for allowing the trial court to apply the law to the facts. *See id.* However, if the issue is whether an officer had probable cause, under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See id.* "In a recent decision, the United States Supreme Court held that, although great weight should be given to the inferences drawn by the trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Id.* (citing *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The reason for this rule is that " 'probable cause and reasonable suspicion acquire content only through application.' " *Id.*

■ The trial court found Bubba's positive canine sniff of appellant's bags, which was not done in appellant's presence, plus Corley's suspicions of drug trafficking, together with Hartman's identification of appellant's claim tickets that matched the suspect suitcases, to be sufficient to give Hartman reasonable suspicion to justify a temporary investigatory detention of appellant. In*Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991), the Supreme Court held that officers need not have any level of suspicion to simply ask for permission to do something so long as the officers don't indicate that compliance is required. *See Hunter v. State,* 955 S.W.2d 102, 103 (Tex. Crim.App.1997). Not every encounter between police and citizens implicates the Fourth Amendment. *Bostick,* 111 S.Ct. at 2386; *Hunter,* 955 S.W.2d at 103. A police officer is just as free as any other citizen to stop and ask questions of a fellow citizen. *Id.* Such encounters are consensual "[s]o long as a reasonable person would feel free 'to disregard the police and go

about his business.' " *Id.* The Supreme Court in *Bostick* emphasized that

> [W]hen officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, . . .; ask to examine the individual's identification, . . .; and request consent to search his or her luggage, . . . as long as the police do not convey a message that compliance with their requests is required.

*Bostick,* 111 S.Ct. at 2386 (citations omitted)

■ As in all cases involving a determination of whether a "seizure" has occurred for Fourth Amendment purposes, the particular encounter is assessed by looking at the totality of the circumstances. *Bostick,* 111 S.Ct. at 2388–89; *Hunter,* 955 S.W.2d at 104–105.

■ The encounter between appellant and the officers in this case was not rendered a "detention" simply by virtue of the fact that the officers asked for appellant's identification and requested to search his bag. Rather, the dispositive question is whether the officers conveyed a message to appellant that compliance with their requests was required. *Id.*

Hartman was dressed in plain clothes, and there is no evidence that his weapon was visible. Hartman approached appellant asked appellant if he could speak with him and identified himself as a police officer. Hartman asked appellant some questions about his travel plans and then asked to see his ticket. Hartman returned the ticket to appellant and asked to see his identification. Hartman asked appellant if he knew why a narcotics canine would alert to the scent of narcotics in his luggage, to which appellant replied that he did not know. Hartman asked appellant to walk with him to the jetway to determine if the two suspected suitcases in fact belonged to appellant, and appellant agreed. Appellant identified the two bags as his, and told Hartman that he had no objections to Hartman looking inside the

suitcases. He informed appellant that he did not have to consent to the search. He asked appellant for the key to the lock on the suitcase, and appellant said it was not his lock. Hartman asked appellant if he could open the suitcase, and appellant gave Hartman verbal consent. Upon opening the suitcase, Hartman discovered the marihuana. Hartman advised appellant he was under arrest for possession of marihuana, and read appellant his rights warnings. A total of 68.8 pounds of marihuana was found in appellant's suitcases.

Under these facts, a reasonable person would have felt free to walk away from Hartman at any time during the encounter, prior to the search of the bag. With the exception of Bubba's positive canine sniff, the facts in this case are almost identical to the facts in *Hunter*, 955 S.W.2d at 104–105. While a canine sweep does not constitute a search within the meaning of the Fourth Amendment, a canine sweep can be performed during an investigative detention only if there is reasonable suspicion of criminal activity to continue that detention. *See United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *Davis v. State*, 947 S.W.2d 240, 245; *Walter v. State*, 997 S.W.2d 853, 858 (Tex.App.-Austin 1999, no pet. h.). In this case, Bubba sniffed appellant's luggage *before* any contact was made with appellant by Hartman while appellant's luggage was sitting in the airport in the luggage area. Therefore, there was no Fourth Amendment violation by Bubba's canine sniff here. *Id.*

We find appellant's consent to search was voluntary, and there was no violation of appellant's state and federal constitutional rights in the search of appellant's luggage. Appellant further contends his warrantless arrest violates article 38.23, Texas Code of Criminal Procedure. Because we have found that appellant's search and seizure were valid, there was no violation any provisions of the state and federal constitutions, nor any violation of the state and federal laws. Consequently, there can be no violation of article 38.23. Appellant's point of error one is overruled.

In point two, appellant contends that the officers had no probable cause to arrest because Bubba's qualifications as a narcotics sniffer were not proved by the State. Appellant did not raise this point in his motion to suppress, nor did he raise this point at the hearing on the motion to suppress. Appellant contested only the issue of his consent to search. Appellant has preserved nothing for our review. TEX.R.APP. P. 33.1(a); *Etheridge v. State*, 903 S.W.2d 1, 16 (Tex.Crim.App.1994). Point of error two is overruled.

In point three, appellant contends the officers lacked probable cause because they relied upon information gained from an invalid search. As support for his contention that the arresting officer relied upon an invalid search, appellant refers us to his discussion under point two concerning Bubba's qualifications. Apparently, appellant is again contesting Bubba's sniff on the grounds that he was not qualified. This issue was not presented to the trial court and is overruled. *Id.*

We affirm the judgment of the trial court.