**Freddy VARGAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–243–CR.**

Court of Appeals of Texas, Waco.

April 19, 2000.

**250**

William F. Carter, Madisonville, for appellant.

Alfred Eugene Hernandez, Special Prison Prosecution Unit, Huntsville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

A car was stopped by troopers of the Department of Public Safety because it had no front license plate. Neither driver nor passenger could specifically say where they were going, who they were seeing or where they were staying. The driver acted nervous. A warning citation was issued for the license plate violation. The driver was then asked for consent to search the vehicle. He orally consented to the search. A trooper found a substance he thought was cocaine in packages that were in a gold pillow, inside a terry-cloth bag. The driver and the passenger were arrested. We are asked to decide whether the driver was detained, if his consent to search the car was involuntary, and if the search of the car exceeded the scope of the driver's consent. We answer "no" to all three questions.

### PROCEDURAL BACKGROUND

Freddy Vargas was indicted for Aggravated Possession of Cocaine, with the intent to deliver, in an amount over 400 grams. At a hearing prior to trial, the trial court denied his motion to suppress. Thereafter, Vargas entered a plea of guilty in exchange for a 35 year prison sentence. He appeals the denial of his motion to suppress.

### STANDARD OF REVIEW–MOTION TO SUPPRESS

The standard we use when reviewing the denial of a motion to suppress was established by the Court of Criminal Appeals in *Guzman v. State*. *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997). In that opinion, the Court stated:

> [A]s a general rule, the appellate courts ... should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. [citation omitted]. The appellate courts ... should afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. [citation omitted]. The appellate courts may review *de novo* 'mixed questions of law and fact' not falling within this category. [citation omitted].

*Id.* at 89. At the very least, the *Guzman* Court concluded that determinations of reasonable suspicion or probable cause fall within the last category and should be reviewed *de novo* on appeal. *Id.* at 87. Since *Guzman*, the categories to be reviewed *de novo* on appeal have been expanded.

### DETENTION

In his first issue, Vargas asks us to decide whether he was detained by Department of Public Safety troopers after being issued a warning citation.

 Undoubtedly, whether Vargas was detained is a mixed question of law and fact. The critical question is whether the resolution of this question "turns" on

an evaluation of credibility and demeanor. *Loserth v. State,* 963 S.W.2d 770, 772 (Tex. Crim.App.1998); *Guzman,* 955 S.W.2d at 89. If the resolution of the question "turns" on an evaluation of credibility and demeanor, the appellate courts afford almost total deference to the trial court's ruling. *Guzman,* 955 S.W.2d at 89. If the resolution of the question does not "turn" on the evaluation of credibility and demeanor, the appellate courts conduct a *de novo* review of the question. *Id.* The fact that credibility and demeanor are factors, even important factors, in the trial court's assessment does not necessarily mean the question "turns" on an evaluation of credibility and demeanor. *Loserth,* 963 S.W.2d at 772. A question "turns" on an evaluation of credibility and demeanor "when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue...." *Id.* at 773, (emphasis in original).

■ In other words, if we believed everything testified to by the troopers in this case, would their testimony always be enough to support a finding that Vargas was not detained under the law? We believe the Court of Criminal Appeals has answered this question in the negative in *Hunter v. State.* In *Hunter,* the court of appeals conducted a *de novo* review of the issue of detention. In a footnote, the Court of Criminal Appeals noted that the resolution of the issue of whether the appellant was detained within the meaning of the Fourth Amendment did not turn on the evaluation of credibility and demeanor. The Court approved of the court of appeal's *de novo* review. *See Hunter v. State,* 955 S.W.2d 102, 105 n. 4 (Tex.Crim. App.1997). Thus, in the context of a motion to suppress, the proper standard for review when determining whether a citizen was detained is a *de novo* review. *Id.; Sanders v. State,* 992 S.W.2d 742, 744 (Tex. App.—Amarillo 1999, pet. ref'd).

■ That is not to say that all parts of this review are *de novo.* We still review

with almost total deference to the trial court the historical facts that the record supports. *See Loserth,* 963 S.W.2d at 773; *see also, Loesch v. State,* 958 S.W.2d 830, 831–832 (Tex.Crim.App.1997). The deferentially-reviewed historical facts are then weighed *de novo* against the substantive issue, that is, whether Vargas was detained. *Loserth,* 963 S.W.2d at 774. When, as here, the trial court does not make any findings of fact, "the [historical] facts will then be viewed in the light most favorable to the trial court's ruling." *Id.* Because the trial court denied Vargas' motion to suppress, we will resolve any conflicts in the evidence in favor of the denial of the motion. *See Hunter,* 955 S.W.2d at 104 n. 2.

■ Vargas does not contest that he had been legally detained pursuant to a lawful traffic stop, and we will not review that issue. He argues that because he was questioned after receiving his warning, he was detained. Recently, some courts have addressed issues of detention under similar fact patterns and have found a justified detention. *See Zervos v. State,* 2000 WL 125961 (Tex.App.—Texarkana February 4, 2000, no pet. h.); *Powell v. State,* 5 S.W.3d 369 (Tex.App.—Texarkana 1999, no pet.); *Gonzalez v. State,* 976 S.W.2d 324 (Tex. App.—Corpus Christi 1998, no pet.). They were not asked to determine if the initial detention had ceased and a new detention had begun. Under a variety of different fact situations, other courts have reviewed the question of whether an encounter was a detention at the time the suspect was questioned by a law enforcement agent. *See State v. Velasquez,* 994 S.W.2d 676 (Tex.Crim.App.1999) (encounter in a bus); *Hunter v. State,* 955 S.W.2d 102 (Tex. Crim.App.1997) (encounter in a bus); *Middleton v. State,* 1999 WL 1189060 (Tex. App.—Houston [14th Dist.] December 16 1999, no pet. h.) (encounter in an airport); *State v. Ross,* 999 S.W.2d 468 (Tex.App.— Houston [14th Dist.] 1999, pet. granted) (encounter inside and outside a bar). Because we agree that the determination of

detention ought to be made based on the situation as it exists at the time of an inquiry by police about which the defendant complains, we will determine whether Vargas was detained *at the time* the troopers requested permission to search his vehicle.

Not every encounter between law enforcement and citizens implicates a Fourth Amendment seizure. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *Hunter*, 955 S.W.2d at 104. Encounters are not detentions simply when the officer asks additional questions, including a request for consent to search. *See Hunter*, 955 S.W.2d at 104. The dispositive question is whether the troopers conveyed a message to Vargas that compliance with the request to search was required. *Bostick*, 501 U.S. at 435, 111 S.Ct. 2382; *Hunter*, 955 S.W.2d at 104. If compliance with the request was required, then Vargas would not feel free to leave the scene and the troopers' request would constitute a detention. The encounter between Vargas and the troopers must be assessed by reviewing the totality of the circumstances. *See Bostick*, 501 U.S. at 439, 111 S.Ct. 2382.

### The Evidence

Viewed in the light most favorable to the trial court's ruling, Troopers Webb and Hernandez were on patrol, in a marked car and wearing uniforms, when they stopped Vargas' vehicle for failure to display a front license plate. Vargas was asked to step out of the vehicle. When questioned individually, neither Vargas nor his passenger were clear about where they were going, who they were seeing or how long they were staying. While Hernandez was writing a warning for the traffic violation, Webb inquired about a television Vargas had in his vehicle. Vargas became agitated.

Hernandez asked Vargas to sign the warning and gave back his driver's license. Both troopers testified that Vargas was free to leave at this point in time.[1] Hernandez then asked if Vargas was carrying any weapons or contraband. Vargas replied that he wished he was carrying "dope." He became very nervous, and Hernandez asked for written consent to search his vehicle. At first, Vargas refused to allow the search. However, after Hernandez explained that if there was no contraband, he had nothing to fear, Vargas agreed to let Hernandez search. Vargas specifically refused to allow Webb to search his vehicle. It was explained to Vargas that he was not required to consent to the search.

Hernandez had Vargas retrieve his keys and open the back of the vehicle. During the search of that area, Hernandez located a terry-cloth bag with a gold pillow in it. The zipper on the gold pillow was open, and three packages wrapped together in gray duct tape were inside. One had a "v" cut into it, and white powder was leaking from that opening. Hernandez suspected that the powder was cocaine. Vargas and his passenger were arrested.

### Application

There are observations worth noting in deciding whether the troopers conveyed a message that compliance with the request to search was required. Although the troopers were in uniform, there was no testimony that they took any kind of intimidating stance toward Vargas. They did not draw their guns; they did not both question Vargas at the same time; and they did not suggest that they would get a search warrant if Vargas did not permit the search. Additionally, Vargas' agreement to allow Hernandez to search the vehicle and refusal to allow Webb to conduct any part of the search, weighs against any inference that the actions of the troopers required compliance with their request to allow a search of his vehicle. Based on

---

1. There is no requirement to inform a suspect he is free to leave after a lawful traffic stop.

*Ohio v. Robinette*, 519 U.S. 33, 39–40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996).

the totality of the circumstances, we find that the record supports a finding that the troopers did not convey a message that compliance with the request to search was required. Vargas was not detained. His first issue is overruled.

Vargas' second, third and fourth issues rely on a determination that he was detained after the warning was issued. Because we have held he was not detained, these issues are overruled as well.

## CONSENT TO SEARCH

In his fifth issue, Vargas contends that even if he was not detained, his consent was not voluntarily given. In his sixth issue, he contends that if his consent was voluntary, the trooper's search exceeded the scope of the consent given. Again, the first question to be resolved is whether to review consent-to-search issues *de novo* or give deference to the trial court's determination. *See Guzman*, 955 S.W.2d at 89.

VOLUNTARINESS OF CONSENT–STANDARD OF REVIEW

It is well-settled that one of the exceptions to the warrant and probable cause requirements of the Fourth Amendment is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Harris v. State*, 994 S.W.2d 927, 930 (Tex.App.—Waco 1999, no pet.). The Texas Constitution requires that the State prove by clear and convincing evidence that consent to search was freely given. *State v. Ibarra*, 953 S.W.2d 242, 244–45 (Tex.Crim.App.1997). For the consent to be voluntary, it must not be the product of duress or coercion, actual or implied. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). Whether the consent to search was in fact voluntary is to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041; *Harris*, 994 S.W.2d at 930.

The voluntariness of a consent to search is a mixed question of law and fact. The next question we resolve is whether the determination of this issue "turns" on the credibility and demeanor of the witnesses. The Court of Criminal Appeals has not addressed whether consent to search requires a *de novo* review under *Guzman*. So the question becomes, if we believed everything one or more of the State's witnesses testified to, would it always add up to what is needed to decide whether the consent to search was voluntary? *See Hunter* 955 S.W.2d at 105 n. 4; *Loserth*, 963 S.W.2d at 773. Because voluntariness is dependent on whether any duress or coercion was placed on the person giving the consent, we cannot say that it would. Thus, after giving deference to the historical facts, we must conduct a *de novo* review of whether the State proved by clear and convincing evidence that Vargas' consent to search his vehicle was voluntary. *Harris*, 994 S.W.2d at 932; *Sanchez v. State*, 982 S.W.2d 929, 930 (Tex. App.—Austin 1998, no pet.); *Combest v. State*, 981 S.W.2d 958, 961 (Tex.App.—Austin 1998, no pet.).

SCOPE OF SEARCH–STANDARD OF REVIEW

When an individual voluntarily consents to a search, an officer's authority to perform the search is not without limit. *Harris*, 994 S.W.2d at 931 (citing *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim. App.1996)). The extent of the search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297 (1991); *Id.* The standard for measuring the scope of consent is that of "objective" reasonableness–what the typical reasonable person would have understood by the exchange between the officer and the individual. *Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1803–04; *Harris*, 994 S.W.2d at 931.

In *Jimeno*, the question presented to the Supreme Court was whether it was

reasonable for an officer to consider that a suspect's general consent to search his car included consent to examine a paper bag on the floor. The Supreme Court held that it was reasonable. *Jimeno*, 500 U.S. at 251, 111 S.Ct. at 1804. Because the suspect did not place any explicit limitation on the scope of the search conducted, the Court found that it was objectively reasonable for the police to conclude that the general consent to search his car included consent to search containers within that car which might contain drugs. *Id.*

 This issue is also a mixed question of law and fact. Because the Court of Criminal Appeals in *Guzman* expressly overruled its decision in *DuBose* which used an abuse of discretion standard to review a scope of consent issue, we will conduct a *de novo* review of Vargas' similar complaint. *Guzman*, 955 S.W.2d at 90.

## THE EVIDENCE

Hernandez asked Vargas for written consent to search his vehicle for contraband after Vargas told Hernandez that he "wished he was carrying dope." Vargas refused. He was informed that he was not required to give his consent to search the vehicle. Hernandez told Vargas that if he did not have any contraband in his vehicle, he did not have anything to fear. Vargas replied, "Okay, Hernandez, if you want to look in it you can." Vargas adamantly refused to allow Webb the opportunity to participate in the search. Thus, Vargas expressly limited his consent to search by allowing only Hernandez to conduct the search. Hernandez asked Vargas to retrieve his keys and open the back of the vehicle. He complied, and when Hernandez entered the back, he located the gold pillow containing what he thought was cocaine. During the entire encounter, Hernandez and Vargas spoke English to each other. It was apparent to the troopers that Vargas understood the questions asked and responded appropriately. Hernandez believed that Vargas understood his right not to consent to the search.

## APPLICATION

 Although Vargas orally consented to the search after being advised that if he had no contraband, he had nothing to fear, this is not a statement that would be considered coercive or cause duress. We have already decided that he was not detained after the issuance of the warning. Vargas was not handcuffed, and he was not under arrest. He was not promised anything in return for his consent. He was advised of his right to refuse consent, and initially refused to sign a written consent to search. Vargas' limitation that only Hernandez could conduct the search and not Webb weighs heavily in favor of finding his consent was voluntarily given and that there were no limitations on the search other than who could conduct it. Based on the totality of the circumstances, we find clear and convincing evidence that Vargas was not coerced nor under duress when he consented to the search of the vehicle. Vargas' fifth issue is overruled.

 Vargas next argues that he limited the scope of the search to be conducted by telling Trooper Hernandez that he could "look" in his vehicle. Hernandez had asked if he could *search* Vargas' vehicle for *contraband*. In viewing the exchange between Hernandez and Vargas, the typical person would not have thought the use of the word "look" by Vargas was an express limitation on the scope of the search to be conducted. Rather, the typical person would have thought that Vargas was simply using a less formal synonym for the word "search." He equated the word "look" with the word "search." This is especially apparent in light of Vargas' express limitation of any search to be conducted by Webb. Thus, it was objectively reasonable for Hernandez to conclude that Vargas consented to a general search of the interior of his vehicle and any container which could contain the object of his search, namely contraband, including the pillow where the cocaine was located. Vargas' sixth issue is overruled.

## CONCLUSION

Having overruled all issues pertaining to this appeal, Vargas' judgment of conviction is affirmed.

Justice VANCE concurring.

BILL VANCE, Justice, concurring.

The ultimate question in this case is whether the search of Vargas' car was legal following a legitimate traffic stop. Although it reached the correct result, the majority has posed the wrong question and, therefore, used the wrong standard to determine whether Freddy Vargas was illegally detained. As a result, I must concur.

Officers have a right to approach citizens, without any justification, to ask questions and even to request a consent to search. *Lewis v. State,* 15 S.W.3d 250, 254 (Tex.App.—Texarkana 2000, no pet. h.) (citing *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App.1995)). If a reasonable person would feel free "to disregard the police and go about his business," then this is an encounter which is consensual and merits no further analysis. *Id.*

Vargas' first issue complains that he was detained after a warning citation was issued. The majority concludes that he was not. In so finding, the majority relies heavily on *Hunter v. State,* 955 S.W.2d 102, 104 (Tex.Crim.App.1997). *Hunter* involved a stop at a bus station in which two officers approached Hunter and began asking him questions about his destination and whether he was carrying drugs. *Id.* at 103. Hunter consented to a search of his bags and the officers found drugs. The question in Hunter was whether he was "detained." If so, a "reasonable suspicion" was required. The Court of Criminal Appeals stated that "the dispositive question is whether the officers conveyed a message to appellant that compliance with their requests was required." *Id.* at 104. The majority uses this as the standard for

determining whether Vargas was detained. Although, as I have noted, a police officer may walk up to an individual and request consent to search without the encounter being a detention, the issue presented by the facts of this case is very different from *Hunter.*

If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop and detain the person committing the offense. *Powell v. State,* 5 S.W.3d 369, 376 (Tex.App.—Texarkana 1999, pet. ref'd). It is undisputed that Vargas was validly stopped for failing to have a front license plate. During the initial stop, the officers had the right to request a driver's license, insurance papers, information on the ownership of the vehicle, the driver's destination, and the purpose of the trip. *Zervos v. State,* 15 S.W.3d 146, 150 (Tex.App.—Texarkana 2000, no pet. h.) (citing *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.—Fort Worth 1998, pet. ref'd)). *If* during the course of this valid detention, the officer develops a reasonable suspicion that criminal activity is occurring, then a continued detention is justified. *Id.* (citing *Davis v. State,* 947 S.W.2d 240, 245 (Tex.Crim.App. 1997), and *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991)). Once the initial stop is concluded, the officer is entitled to rely on any information obtained during the course of the stop to develop an articulable reason for a continued investigatory detention. *Id.; Bustamante v. State,* 917 S.W.2d 144, 146 (Tex.App.— Waco 1996, no pet.).

While standing at the back of Vargas' car, Officer Hernandez gave Vargas a warning for failure to display a front license plate and asked if he was carrying any weapons or contraband. Vargas replied, "I wish I was carrying dope." Hernandez then asked for written consent to search the car. There was never a break in the activity. There was never an opportunity for Vargas to get back into his car

and leave, although Officer Webb testified that he was in fact free to leave at this point. Nevertheless, a reasonable person would not have felt free "to disregard the police and go about his business." *Johnson*, 912 S.W.2d at 235. Because a reasonable person would not have felt free to leave at this point, Vargas was "detained."

Once the investigation of the traffic violation was concluded, *i.e.*, the warning was issued, Officers Hernandez and Webb could not lawfully detain Vargas further unless they had a reasonable suspicion to believe that another offense was being committed. *Davis*, 947 S.W.2d at 245. This is the question that Vargas raises in issue two.

Webb testified that Vargas acted nervous, seemed agitated, and could not say where he was going. He testified that Vargas and his passenger, Juan Villaquiran, gave different stories about the purpose and destination of their trip. Hernandez likewise testified that Vargas acted nervous and wanted to know why he had to answer so many questions. Hernandez asked Vargas where he was going and Vargas replied, "up to the next town." When asked who they were going to see and how long they were planning to stay, Vargas stated that he did not know. He further testified that Villaquiran initially stated that he did not know where they were going, but then changed his story to say they were going to Madisonville. He could not, however, remember who they were going to visit. Because Vargas could not tell the officers where he was going, who he was going to see, or how long he was going to stay, in addition to being in a nervous and agitated state, it was reasonable for the officers to suspect that criminal activity was occurring. The facts and circumstances summarized above were sufficient to show that, during the course of the valid investigative stop and before issuing Vargas a warning citation, the officers developed a reasonable, objective suspicion that Vargas was engaged in some kind of unlawful activity. *Zervos*, at 150. Thus, the further detention was justified.

Because the detention was justified, I do not reach issues three and four. I agree with the majority's analysis of issues five and six. Reaching the same result as the majority, I concur in affirming the judgment.