In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00041-CR
______________________________


MARCUS EUGENE WILLIAMS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31005-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Saying he had nothing to hide, Marcus Eugene Williams cooperated fully with Longview
police sergeant Roy Buckner and his fellow officer, when they called at his Longview motel room
in mid-2002 and sought permission to enter and search the room for drugs in response to an
anonymous tip of possible narcotics trafficking there. Unfortunately for Williams, he did have
something to hide.
            After Williams consented to the officers' search of the room, a brief search


 turned up no
drugs. Then Williams consented to a search of his person, which turned up a small packet containing
a rock of crack cocaine. Williams was arrested and placed in the officers' car, and the officers then
searched the room more thoroughly, finding a package containing 2.7 grams of cocaine in the pocket
of a shirt hanging in the room.
            Williams was indicted for possession of a controlled substance, more than one gram but less
than four grams, with intent to deliver. He filed a motion to suppress, but the trial court overruled
it. About three months later, Williams pled guilty without a plea agreement and was sentenced to
ten years' imprisonment. In a single point of error, Williams asserts the trial court erred in overruling
his motion to suppress and argues, in support of his point of error, that (1) he did not voluntarily
consent to the searches and (2) the post-arrest search of the motel room was unreasonable. We
disagree and affirm the conviction.
Williams' Consent to Search Was Voluntarily Given

            Williams claims there is insufficient evidence in the record to establish he voluntarily
consented to the officers' search of his room. Rather, he argues, the record shows his consent was
mere "acquiescence to a claim of lawful authority." Carmouche v. State, 10 S.W.3d 323, 331 (Tex.
Crim. App. 2000), citing Bumper v. North Carolina, 391 U.S. 543, 548 (1968). Whether consent
was voluntarily given is reviewed under the totality of the circumstances. Reyes v. State, 741 S.W.2d
414, 430 (Tex. Crim. App. 1987); Jackson v. Texas, 968 S.W.2d 495, 498 (Tex. App.—Texarkana
1998, pet. ref'd). Courts have identified a number of nonexclusive factors to be considered in
determining whether a person voluntarily consented to a search: (1) whether the police displayed
weapons or used physical force or other intimidating tactics; (2) whether the police engaged in
misconduct; (3) whether the police asserted a right to search; (4) the degree to which the detainee
cooperated with the search; (5) the detainee's age, intelligence, education, and physical condition;
(6) the detainee's attitude about the likelihood of discovering contraband; (7) the length of detention
and  the  nature  of  the  questioning;  (8)  whether  the  police  administered  Miranda


  warnings;
and (9) whether the detainee was aware of the right to refuse consent. State v. $217,590.00 in United
States Currency, 18 S.W.3d 631, 634–35 (Tex. 2000). No single factor of these is dispositive;
rather, the reviewing court must look to the totality of the circumstances. Id. 
            In the instant case, Buckner testified on cross-examination to a brief initial conversation with
Williams during which Williams consented to the search:
[Defense counsel]: When [Williams] comes to the door, what do you say,
exactly?
 
[Buckner]: "We're here in response to a call for narcotics trafficking. Are
you selling any drugs?"
 
[Defense counsel]: What was his response?
 
[Buckner]: "No, sir, no."
 
[Defense counsel]: What did you say?
 
[Buckner]: I asked him, "Do you mind if I come in your room and search?"
 
[Defense counsel]: What was his response?
 
[Buckner]: He says, "No, come on in." I informed he did not - - he was not
required to allow me to consent - - he was not required to consent to my search of his
room and he said, "I don't have anything to hide."
When, later, Williams consented to Buckner's search of Williams' person, Buckner asked, "Are you
sure?" Williams said, "I don't have anything to hide." Williams was thirty years of age at the time
of his guilty plea. He had two prior felony convictions, for possession and delivery of controlled
substances in penalty group one, both of which led to prison sentences. Buckner acknowledged he
did not have probable cause to search the room when he arrived, and there is no assertion he
administered Miranda warnings to Williams before searching the room initially or searching
Williams' person. Based on the totality of the circumstances, we hold the trial court was well within
its discretion in finding Williams voluntarily consented to both the search of the room and his
person.
Post-Arrest Search Was Reasonable
            Williams next contends that, after his arrest for possession of cocaine, it was unreasonable
for the officers to go back to the motel room and continue searching.


 A consensual search is an
exception to the warrant requirement, but a consensual search is limited by the terms of its
authorization. The actual consent given is determined by an objective standard. The standard is
objective reasonableness, i.e., what would the typical reasonable person have understood by the
exchange between the officer and the suspect? Cardenas v. State, 857 S.W.2d 707 (Tex.
App.—Houston [14th Dist.] 1993, pet. ref'd). The scope of a general consent to search is not
limitless; rather, such a search is constrained by the bounds of reasonableness. Id. Whether a search
or seizure is reasonable under the Fourth Amendment is an issue of law that we review de novo. 
Bishop v. State, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002). Therefore, while we apply the "clearly
erroneous" standard to the trial court's factual findings, we apply the "objective reasonableness"
standard to the trial court's ruling on the suppression issue. See Cardenas, 857 S.W.2d at 710; see
also United States v. Ibarra, 965 F.2d 1354, 1356 (5th Cir. 1992).
            Once law enforcement has begun a consensual search, it may continue that search until
consent is withdrawn. See Florida v. Jimeno, 500 U.S. 248, 251 (1991). Further, "[t]he scope of
a search is generally defined by its expressed object." Id. Here, the officer told Williams on initial
contact that he was investigating a report of narcotics activity and that he was looking for narcotics. 
He even asked Williams, when Williams answered the door, if he was selling drugs. 
            For the purpose of our discussion, we will assume that, after Williams' arrest, the officers
conducted a second search of the motel room. The Texas Court of Criminal Appeals addressed a
similar situation where police officers entered the apartment of the defendant with the consent of a
third party. That third party had been given temporary permission, by the defendant, to use the
apartment. Morrison v. State, 508 S.W.2d 827, 829 (Tex. Crim. App. 1974). The court held that,
when officers re-entered the apartment four hours later, the initial consent carried over to the second
entrance and search. In that case, however, the third party attended officers on both entries. See id. 
In another case, a third party's consent to search a house on one day carried with it the implicit
consent to search again nine days later. Smith v. State, 530 S.W.2d 827, 833 (Tex. Crim. App.
1975), overruled in part on other grounds, Comer v. State, 754 S.W.2d 656 (Tex. Crim. App. 1988).
            The Austin Court of Appeals found that a second search was not authorized by a defendant's
initial consent where the defendant allowed the police to search his residence, he accompanied
deputies to the station for questioning, he was arrested for burglary, and law enforcement then
returned to the residence and resumed their search. Sanchez v. State, 982 S.W.2d 929, 931–33 (Tex.
App.—Austin 1998, no pet.). The Sanchez court noted that Sanchez, in jail at the time of the second
search, did not have the opportunity to consent to or refuse the second search and, when he granted
consent for the first search, did not know a second would occur. Id.
            In Hawkins, the appellant had threatened his live-in girlfriend and her child with a sawed-off
shotgun. When officers arrived, Hawkins had possession of the child in the apartment; the officers
met with the girlfriend, entered the couple's apartment with her, and negotiated the release of both
the girlfriend and child. Officers took the girlfriend and child to the station, then returned about two
hours later. They subsequently negotiated Hawkins' surrender and retrieved the shotgun from the
apartment. Based on the facts of the case, the appellate court held that the girlfriend's consent to
enter the apartment the first time, to secure the release of the child, carried over to the second
entrance and search to retrieve the shotgun. Hawkins v. State, 968 S.W.2d 382, 385 (Tex.
App.—Tyler 1997, pet. ref'd).
            Another case addressed a situation where the husband of a murder victim executed a written
consent to a search of the couple's home, which was also the murder scene. Officers returned to the
home to search on each of the two days following the murder, and seized evidence. Approximately
a week later, the husband was arrested for his wife's murder. Holding that the appellant-husband had
the opportunity to, but did not, withdraw his initial consent, the court found the subsequent searches
were authorized by the written consent. Scaggs v. State, 18 S.W.3d 277, 287–89 (Tex.
App.—Austin 2000, pet. ref'd).
            Each of the foregoing cases takes into consideration the circumstances under which consent
was given. Noted, but not necessarily controlling, is the amount of time between the initial consent
and the subsequent follow-up or second (and third, in Scaggs) search. In this case, there was a
continuous encounter between law enforcement officers and Williams. Williams had already granted
the officers consent to search the room and his person before he was arrested. Williams' theory at
the suppression hearing was essentially the same as that urged on appeal—that the search of the
room following his arrest was unreasonable in that, when officers resumed their search after arresting
him, they thereby exceeded the scope of the consent Williams had given. But there is no evidence
that suggests Williams withdrew his consent following the drugs being found in his pocket or that
contradicts Buckner's testimony that Williams had been very cooperative and cordial during their
encounter. Williams made no effort to limit the scope of the officers' search or to withdraw his
consent, once given. On review of the testimony adduced at the suppression hearing, we do not think
it was unreasonable for police to resume their search of the room after finding Williams in
possession of cocaine and arresting him. In the totality of the circumstances, we find the consent
given by Williams was broad enough to have encompassed the officers' resumed, and more thorough,
search of the motel room. The trial court was also within its discretion in finding the post-arrest
search reasonable and with authority. 
            We overrule Williams' point of error and affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 6, 2004
Date Decided:             March 29, 2005

Do Not Publish