NO. 07-07-0477-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 14, 2009
_____

AUDEL MORENO,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 100TH DISTRICT COURT OF CARSON COUNTY;

NO. 3566; HON. DAVID M. MCCOY, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Audel Moreno was convicted after pleading guilty to possessing a controlled substance (cocaine) with intent to deliver in an amount of 400 grams or more. He challenges the trial court's denial of his motion to suppress by contending that 1) the traffic stop was impermissibly prolonged without reasonable suspicion, 2) his consent to search was not voluntary, 3) the search of appellant's vehicle exceeded the scope of any

consent, and 4) his motion for new trial should have been granted since he allegedly was denied a fair hearing.  We affirm the judgment.

*Background*

On September 6, 2005, appellant and his passenger, Ana Rubio, were traveling east on Interstate 40 when they were stopped by Troopers Esqueda and Bridges for having an obscured Illinois license plate.  Appellant was driving a car that had been purchased with $25,000 cash on June 28, 2005.  Furthermore, he allegedly appeared nervous.  When asked by the troopers, appellant and his passenger provided them with conflicting stories concerning the purpose and length of their trip and the place at which they stayed.  Further, Esqueda both saw and smelled air freshener in the car which he knew from training was often used by drug smugglers to mask the smell of contraband.

After the troopers checked to see if appellant had a criminal history or was subject to any outstanding warrants, they issued him a warning (approximately 12 minutes after the  stop began), asked if he was carrying any contraband, and requested permission to search the vehicle.  Oral consent was given, and the ensuing search uncovered the cocaine at issue.

*Issue 1 - Detention*

Appellant first argues that his detention for a traffic violation was unreasonably prolonged and, therefore, impermissible.  We overrule the issue.

We review the trial court's ruling on a motion to suppress by affording great deference to its interpretation of historical facts.  *Ford v. State,* 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).  That includes deference to both the trial court's authority to assess the credibility of the witnesses and to disbelieve or believe controverted testimony.  *State v.*

*Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, we do not afford like deference to the trial court's application or interpretation of the law. *Ford v. State,* 158 S.W.3d at 493. And, while the trial court may give an inaccurate reason as support for its decision, we nonetheless must uphold the ruling if it is supported by the record and correct under any theory of law. *Stevens v. State,* 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

Next, it is clear that an officer witnessing a traffic violation may stop the vehicle and detain its occupants for no longer than necessary to effectuate the purpose of the initial stop. *Strauss v. State,* 121 S.W.3d 486, 490 (Tex. App.–Amarillo 2003, pet. ref'd). Yet, as part of that detention, he may require the detainee to identify himself, produce a driver's license, and provide proof of insurance. *Id.* at 491. So too may he ask the driver and his passenger about their destination and the purpose of their trip. *Id.* The officer may also check to see if there exist any outstanding warrants for the detainee and, once the purpose of the stop has been effectuated, ask if the driver possesses illegal contraband and request consent to search the vehicle. *Id.* Because merely requesting such consent does not amount to further detention, *Vargas v. State,* 18 S.W.3d 247, 252-53 (Tex. App.– Waco 2000, pet. ref'd), neither probable cause nor reasonable suspicion is required as a prerequisite to soliciting it. *James v. State,* 102 S.W.3d 162, 173 (Tex. App.–Fort Worth 2003, pet. ref'd); *Leach v. State,* 35 S.W.3d 232, 235 (Tex. App.–Austin 2000, no pet.). With this said, we turn to the facts before us.

Appellant does not deny that the original stop was legitimate. Again, the license plate on his car was obscured by a tinted cover, in violation of state traffic laws. Nor does he cite us to authority suggesting that the 12-minute delay between the initial stop and the

3

point he received the written warning was in and of itself unreasonably excessive. Instead, he posits that once the troopers "verif[ied] the vehicle's registration" and "check[ed] for warrants," they "were obligated to issue the citation and send [him] on his way." That argument does not allow for their authority to briefly question detainees about the purpose of their trip and their destination. Nor does it take into consideration the effect of the inconsistent answers uttered by appellant and his passenger and the troopers' ability to address those inconsistencies. Simply put, the troopers were not required to ignore them. Instead, they could have opted to ask those questions reasonably needed to resolve the inconsistencies (assuming, of course, further questioning would have resolved the inconsistencies and not merely produced circumstances warranting additional investigation). Or, we see no reason why the troopers could not merely opt to cut-to-the-chase, that is, issue a traffic citation and immediately request authorization to search the vehicle. And, that the request at bar may have come as or immediately after a trooper handed the citation to appellant hardly illustrates further delay.

We also note that appellant cites us to no cases suggesting that an officer's taking 12 minutes to stop a traffic violator, ask for his identification and insurance, pose questions addressing the driver's purpose and destination, call dispatch to verify appellant's identity and determine whether he is subject to outstanding warrants, and then issue a citation is inherently excessive or unreasonable. Nor does he so contend. And, while all that occurred, appellant was allowed to return to the vehicle to secure the vehicle's registration from the glove compartment, open his trunk, secure a tool, and use the tool to remove the cover obstructing his license plate without a trooper standing near him. As appellant did these things, the troopers could be heard talking among themselves about the

4

inconsistencies in the stories posed by appellant and his passenger. That appellant was free to move as he did also tends to discredit his contention that he and his passenger (who sat inside the car until the search was authorized) were victims of "persistent, invasive, and accusatory questioning."

In sum, the troopers asked questions and pursued a course of conduct previously found acceptable. And, about ten seconds elapsed between the time the traffic warning had been issued and the trooper requested consent to search. Moreover, the officer was not required to inform appellant that he was free to leave. *Vargas v. State,* 18 S.W.3d at 252 n.1. Under these circumstances, we cannot say that the trial court erred in denying appellant's motion to suppress.

*Issue 2 - Voluntariness of Consent*

Next, appellant contends the State failed to prove, by clear and convincing evidence, that his consent to search was voluntary. This allegedly is so because two troopers were present, each was armed, he was asked a series of questions, he was directed where to stand, and the troopers failed to inform him that he was free to leave or that he could deny consent to search before consent was sought. We overrule the issue.

If the voluntariness of consent is challenged, the State has the burden to prove voluntariness by clear and convincing evidence. *Harrison v. State,* 205 S.W.3d 549, 552 (Tex. Crim. App. 2006). Additionally, whether consent was voluntary is a question of fact determined by the totality of the circumstances. *Johnson v. State,* 226 S.W.3d 439, 443 (Tex. Crim. App. 2007). Those circumstances can include the age of the accused, his education and intelligence, the length of the detention, the repetitiveness of questioning,

5

and the use of physical punishment. *Reasor v. State,* 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). So too is the failure to inform the accused that he can refuse consent an indicia worthy of consideration, though such a failure does not automatically render consent involuntary. *Johnson v. State,* 68 S.W.3d 644, 653 (Tex. Crim. App. 2002).

In applying the foregoing authority to the record before us, we note that appellant was a 27-year-old adult who spoke Spanish. However, the trooper spoke to him in Spanish, and nothing on the video indicates that appellant was unable to understand what he was being told. The video also depicted appellant casually walking (without police accompaniment) to and from his car as he retrieved the vehicle's registration. Also worthy of comment is that neither officer stood near him as he opened the vehicle's trunk to retrieve a tool. Most anything could have been present in the trunk, including a weapon or firearm; yet, the troopers stood so far from him that their visage was not captured by the camera in their squad car. These indicia hardly depict coercion or undue sequestration of appellant by the law enforcement officers. Nor do they depict tension or apprehension on the part of appellant or his passenger. Indeed, appellant was allowed to walk around, stand with his hands in his pockets, fix his car, and even shake hands with a trooper. In turn, his passenger was allowed to remain in the car until the search was authorized.

Admittedly, the troopers were in uniform and had weapons. Yet, there was no testimony or other evidence illustrating that they took an intimidating stance, drew their weapons, questioned appellant at the same time, or suggested that a warrant would be obtained if consent to search was refused. *See Vargas v. State,* 18 S.W.3d at 252 (noting the lack of those factors in finding no coercion involved). And although their request to search and appellant's response occurred off-camera, appellant's conduct indicated that

6

he said yes by walking up to his car (again without any trooper following him), informing his passenger that the officers were going to search, requesting her to exit the vehicle, and permitting the search. *See Caraway v. State,* 255 S.W.3d 302, 310 (Tex. App.–Eastland 2008, no pet.) (noting that although the video did not show an affirmative response to the request to search, the accused's conduct showed he voluntarily consented by accompanying the officer to the vehicle and guiding the initial search).

In short, the record contains evidence which the trial court could have reasonably construed as clearly and convincingly illustrating that appellant's consent to the search was voluntary. This is so, given the totality of the circumstances, even though the troopers did not tell him he could leave or deny consent.

*Issue 3 - Scope of Search*

Appellant next challenges the scope of the search. This issue is also overruled because we do not find in the record where appellant raised it below. It was not mentioned in his motion to suppress or at the hearing held on his motion. Having failed to propose it to the trial court, the issue was waived. *See Strauss v. State,* 121 S.W.3d at 490.

*Issue 4 - Denial of Due Process*

Through appellant's final issue, he questions the trial court's failure to grant him a new trial. He believed himself entitled to it since he discovered after judgment was pronounced that the trial judge was under criminal investigation and later indicted. This circumstance purportedly denied him due process. His motion for new trial, however, was filed more than 30 days after his sentence was pronounced in open court. *See* TEX. R. APP. P. 21.4(a) (requiring that a motion for new trial be filed no later than 30 days after

sentence was imposed or pronounced in open court).  Furthermore, the record does not illustrate that he secured an extension of the 30-day deadline.  So, because the motion was untimely, we overrule the issue.[1]

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Chief Justice


Do not publish.

[1]Should appellant care to develop this issue, art. 11.07 of the Texas Code of Criminal Procedure may be an available avenue.