NO. 07-04-0561-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 14, 2005
_____

ROEL ROBLEDO,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;

NO. 2652; HON. GORDON H. GREEN, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Appellant, Roel Robledo, appeals his conviction for possessing a controlled substance. His sole issue concerns the trial court's order denying his motion to suppress. Suppression was warranted, in his view, because the methamphetamine was seized from the cab of his tractor trailer in violation of both the federal and state constitutions.[1] That is, appellant believes the officer impermissibly detained him after the purpose of the initial stop

[1] Appellant does not separately brief his federal and state constitutional claims, and we will therefore not separately address them.

was effectuated and that his consent to search was involuntary. We affirm the judgment of the trial court.

*Standard of Review*

We review the trial court's ruling on a motion to suppress under the standard announced in *Johnson v. State,* 68 S.W.3d 644 (Tex. Crim. App. 2002) and *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). It requires us to give almost total deference to the trial court's findings of historical fact and review *de novo* the application of the law to the facts. *Johnson v. State,* 68 S.W.3d at 652-53.

*Application of Standard*

The only witness at the suppression hearing was Trooper Joel Rejino. He testified that around midnight he observed the tractor trailer that appellant drove pass him in the opposite direction. Peering through his rearview mirror, he noticed that the vehicle's tail lights were not illuminated. This caused the officer to turn his car around and follow the tractor trailer. While doing so, he realized that the tail lights actually were illuminated but would flicker on and off.

Appellant was eventually stopped and asked for his driver's license and paperwork. So too did the trooper request appellant to accompany him to the patrol car. Both entered the vehicle. Rejino sat in the driver's seat while appellant sat in the passenger seat. There, the trooper examined the registration and insurance documents of the tractor trailer and decided to give appellant a warning ticket. After issuing the written warning, Rejino received a criminal history report from dispatch showing that appellant had no outstanding

warrants but was the subject of a prior drug conviction.[2] Within 10 to 30 seconds of issuing the citation and receiving the report, the trooper requested of appellant permission to search both his person and the tractor trailer. Appellant consented to both. It was during the search of the vehicle that the controlled substance was discovered.

Authority holds that as part of a traffic stop, an officer may 1) require the detainee to identify himself and produce a valid driver's license and proof of insurance and 2) detain the individual for a period of time reasonably sufficient to check for outstanding warrants. *Kothe v. State,* 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004); *Strauss v. State,* 121 S.W.3d 486, 491 (Tex. App.–Amarillo 2003, pet. ref'd). So too may he also ask the driver if he possesses illegal contraband and solicit voluntary consent to search the vehicle once the purpose of a traffic stop has been effectuated. *Strauss v. State,* 121 S.W.3d at 491; *James v. State*, 102 S.W.3d 162, 172-73 (Tex. App.–Fort Worth 2003, pet. ref'd). Requesting such consent is not an unlawful seizure, and neither probable cause nor reasonable suspicion is required for the officer to ask. *James v. State,* 102 S.W.3d at 173. Nor must the officer tell the individual that he is free to leave after the purpose of the stop is completed. *Vargas v. State,* 18 S.W.3d 247, 252 n.1 (Tex. App.–Waco 2000, pet. ref'd).

As previously mentioned, once Trooper Rejino issued the warning and received the report from the dispatcher, he solicited the consent to search. By then the purpose of the stop had been effectuated; yet, only seconds had passed between the time consent was requested and the purpose effectuated. This is not a situation wherein appellant was

---

[2]At another point, Rejino testified that he received the criminal history report prior to issuing the warning. It was up to the trial court to resolve this inconsistency.

detained for minutes or hours prior to broaching the matter of consent. In other words, the effectuation of the stop and the request for consent were rather contemporaneous here. Thus, we view the situation as falling within the scope of *James* and *Strauss* and, consequently, lawful.

As to the contention that his consent was involuntary, we note that to be of such ilk, it must be the product of duress or coercion, express or implied. *Reasor v. State,* 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). Moreover, the evidence of record here does not lend itself to such a claim. First, the initial detention was quite lawful; so, it cannot be said that appellant's acquiescence was part and parcel of illegal conduct on the part of the trooper. Second, no evidence was presented at the suppression hearing that illustrated the officer told appellant he had to consent or that if he did not consent he would be arrested or otherwise detained. Nor is there evidence that the trooper implicitly or explicitly threatened appellant verbally or through gesture. Indeed, but for conduct on the part of appellant indicative of nervousness, the interaction between the two appeared routine for a traffic stop. Finally, that the officer failed to inform appellant that he could exit the patrol car and leave is alone insufficient criteria to illustrate coercion; again, an officer does not have to tell the individual he may leave once the purpose of the stop is completed. *Vargas v. State,* 18 S.W.3d at 252 n.1.

In sum, the trial court did not abuse its discretion in overruling the motion to suppress. Accordingly, we overrule each of appellant's issues and affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Publish.

4