United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 25, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-51494
_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

RENE ARIAS-ROBLES,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Defendant Rene Arias-Robles challenges the district court's
conclusion that he voluntarily consented to a search of his truck.
We affirm.

I

On April 13, 2001, Texas state trooper Michael O'Donnell, a
twenty-three year veteran, was manning a weigh station on I-10
about four miles west of Van Horn, where he had worked as a license
and weight inspector for almost five years.  When defendant Rene
Arias-Robles's tractor-trailer, heading eastbound towards Van Horn,
passed by at about 10:50 p.m., O'Donnell heard a sound coming from
its tires which, according to O'Donnell's experience, indicated

defective tires. O'Donnell pulled his car alongside Arias's truck, rolled down his window, verified the sound, then pulled Arias over.

After identifying himself, O'Donnell performed a "level two" inspection for safety violations, which takes between twenty minutes and one hour to complete, depending upon location of the inspection and the conditions of the driver's paperwork. After performing brake light and other routine equipment checks, O'Donnell studied Arias's license, registration, insurance, bill of lading, and logbook back in his patrol car. He also began a routine background check on Arias's license and criminal history. While inspecting the logbook, O'Donnell noted that Arias was three or four days behind, an automatic "out-of-service" violation precluding Arias from driving for at least eight hours, usually precipitating a police escort to a truck stop to wait out the time. O'Donnell noted another oddity in the paperwork: there was a safety check, but no indication of loading, when Arias supposedly left Dallas, hence he was driving empty, an unusual practice. At about 11:19 p.m., the DPS office in Pecos radioed O'Donnell that Arias had a prior drug arrest.[1]

O'Donnell also determined that two of Arias's tires were "out." This was also an "out-of-service" violation, albeit only until the tires were fixed. And again, here officers usually escort the trucker to the nearest repair facility or truck stop.

---

[1] O'Donnell couldn't remember whether the dispatcher told him the date of the arrest or whether it resulted in conviction.

After finishing the inspection, O'Donnell tried to print out a record of the inspection and citation using the printer in his patrol car, but it wouldn't work. Figuring he'd have to escort Arias to a truck stop in Van Horn to wait out the out-of-service violations and repairs, O'Donnell told Arias to follow him to the Van Horn DPS station so he could print out the record and Arias could sign it.[2]

The DPS office was at the west end of town, about two or three blocks from a truck stop and near the interstate. When the pair arrived, O'Donnell pulled into the parking lot and directed Arias to park on the dirt road on the west side of the office. O'Donnell testified that, while there was room in the parking lot for Arias's truck, he directed Arias to park on the dirt road because it gave Arias a "straight shot" to both sides of the interstate. Around this time, O'Donnell discovered a loose connection with the printer, which began working again.[3] O'Donnell, sitting in his patrol car, printed the report and citations at about 12:05 a.m. while Arias stood next to the car. Arias signed the documents. O'Donnell gave Arias copies of them, again explained the consequences of his out-of-service violations, and told Arias he could go to any local truck stop to wait out the violations. He then returned all of Arias's paperwork and told Arias he was "free

---

[2] O'Donnell conceded, however, that he could've issued the citation without a printer.

[3] The district court, finding O'Donnell credible, found no chicanery here.

to go."

Right after saying Arias-Robles was "free to go," O'Donnell said he was curious about the discrepancies in the logbook and knew of Arias's prior drug arrest. He asked Arias if he had anything illegal in the truck.[4] Arias said "no," and O'Donnell asked if he "would mind" his "looking through" the truck.[5] He did not tell Arias he could refuse the request. Arias consented. After calling for backup, per standard policy, O'Donnell searched the truck, finding several bricks of marijuana in shoebox-like containers hidden in trash bags and duffle bags with padlocks, all in the sleeper compartment.

Arias moved to suppress, arguing, *inter alia*,[6] that his consent wasn't voluntary. O'Donnell testified; Arias did not. The district court applied our six-factor test and denied the motion. Arias plead guilty pursuant to a plea agreement, and the court sentenced him to sixty-three months' imprisonment. Arias appeals, arguing only that his consent wasn't voluntary.

II

Voluntariness of consent is a finding of fact reviewed for clear error, but where there are "virtually no uncontested facts,"

---

[4] O'Donnell testified that he usually asked if the person had "weapons, drugs, or large amounts of currency" but that he could not recall if in this instance he named any such specific illegal items.

[5] O'Donnell could not remember the exact words he used.

[6] He also argued that O'Donnell's directing him to accompany O'Donnell to the DPS office unconstitutionally extended the scope of the search and that O'Donnell exceeded the scope of consent.

4

review is "essentially de novo."[7] Where a defendant challenges the voluntariness of consent to search, the Government must prove voluntariness by a preponderance of the evidence.[8] A court should consider the totality of the circumstances, focusing on six factors: 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found.[9] Although all factors are relevant, none is dispositive.[10]

First, the district court found that Arias's custodial status was voluntary when O'Donnell requested consent because O'Donnell had told him he was "free to go" and returned all his belongings. Arias counters that a reasonable person wouldn't have felt free to go in light of O'Donnell's immediately prior queries about Arias's criminal past and illegal items in the truck. Our precedent supports the district court's finding that Arias, being told he was "free to go," was voluntarily present when O'Donnell requested

---

[7] *See United States v. Vega*, 221 F.3d 789, 795 (5th Cir. 2000).

[8] *See United States v. Santiago*, 410 F.3d 193, 198-99 (5th Cir. 2005).

[9] *Id.* at 199.

[10] *See United States v. Hernandez*, 279 F.3d 302, 307 (5th Cir. 2002).

5

consent.[11] That Arias was free only to go to the truck stop doesn't present the concern attending requests for consent from defendants detained for continued investigation. Arias knew he could not resume driving until he had met the rest requirements, and that he could meet those, not at the hand of the arresting officer, but in the company of other drivers - a non-coercive environment. Nor was there the leverage of a conditioned release. The terms of any remaining constraint were set.

Arias focuses on O'Donnell's testimony that O'Donnell "asked [Arias] if he didn't mind if I looked through the truck and trailer before he was free to go to the truck stop," suggesting that by asking if he could search "*before* [Arias] was free to go," O'Donnell conditioned release on consent to search. The entire transcript, however, belies this strained interpretation of O'Donnell's testimony: it's clear that O'Donnell told Arias he was free to go and then asked if he could search the truck before Arias *left*.[12]

---

[11] *See, e.g., United States v. Sanchez-Pena*, 336 F.3d 431, 443 (5th Cir. 2003); *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004).

[12] In describing the timeline of events, before making the above statement, O'Donnell testified that "[o]nce [Arias] signed the inspection, I advised him he was free to go." After the Government asked whether O'Donnell had anything of Arias's when he said that, O'Donnell replied that he did not and that Arias was "free to go" after he returned the paperwork. O'Donnell then stated, "[i]mmediately [after returning Arias's paperwork], after I advised him that he was – that the inspection was over and he was free to go, I did tell him, however, that I was curious about the discrepancies I noticed in his logbook...." He also testified later that he knew that "the subject has to know that he's actually free to leave, and not to search the vehicle while we're still writing the ticket or anything because they're really not free to leave yet, you know, before the ticket is issued. So I always wait until the end so they know they're free to leave."

Second, the district court found that O'Donnell did not coerce Arias, he merely talked to him; it also found no coercion in any part of the stop before the request for consent or O'Donnell's order that Arias follow him to the truck stop. Arias disagrees, focusing on the length of the stop, O'Donnell's forcing Arias to follow him to the DPS office, and O'Donnell's "jarring" and unsuspected inquiries. The district court properly followed our precedent in finding no coercion here.[13]

Third, the district court found that Arias cooperated with O'Donnell and showed no resistance. Arias doesn't dispute this.

Fourth, the district court assumed that Arias didn't know of his right to refuse consent because O'Donnell never informed him, although it noted the factor wasn't dispositive. Arias highlights this factor, contending it is particularly important here because O'Donnell gave Arias such "conflicting signals."[14] The Government notes that the law doesn't require an officer to advise of the right to refuse consent, it merely mitigates against voluntariness. The district court cautiously assumed lack of knowledge here and properly held the factor not dispositive.

Fifth, the district court found that Arias had some education

---

[13] *See, e.g., United States v. Rivas*, 99 F.3d 170, 175-76 (5th Cir. 1996).

[14] Namely, he notes that: 1) O'Donnell told Arias he was free to go, but that he had to sit at a truck stop for hours; 2) O'Donnell gave him his papers, but then immediately questioned him; and 3) O'Donnell told him that he was free to go, but in a way that suggested a quid pro quo for being allowed to leave, see *supra* note 9.

and is intelligent, noting that, although there was no testimony in this regard, Arias had a commercial driver's license, had maintained a log book, and had obviously understood the purpose of O'Donnell's stop and inspection. It also noted no evidence that Arias had difficulty with English. Arias argues that those facts don't mean he could've navigated O'Donnell's "interrogation practices," pointing out that he has only eleven years of education and has done only manual labor. We agree with the district court's explanation of this factor.

Sixth, the court declined to "speculate" about Arias's belief about what would be found in his truck, deeming this factor "indeterminate" and noting it wasn't dispositive. Arias counters that, except for placing the marijuana bundles in bags, there was no other attempt to hide the drugs; hence Arias must have known O'Donnell would find the drugs, regardless of lack of testimony about Arias's subjective belief. The Government doesn't disagree with Arias, urging instead that no factor is dispositive. Although we agree with Arias that the officers were likely to find drugs,[15] the district court properly, under our caselaw, noted that no factor is dispositive.

Marshaling all six factors, we cannot say that the district

---

[15] *See, e.g., United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997) (noting naïve wife of defendant gave consent); *but see United States v. Hernandez*, 279 F.3d 302, 308 (5th Cir. 2002) (focusing on defendant's initial denial of presence of drugs to hold that he might not have thought there were drugs).

court erred in concluding that Arias's consent was voluntary. Concededly, under our cases a defendant faces a high hurdle in his effort to escape an affirmative response to an officer's request for permission. At the least we are persuaded that our test ought to be skeptical of a defendant's alleged consent when the defendant persuades that he did not know that he had a right to refuse the request for consent to search and it is plain from the facts that the contraband would likely be found. That said, we cannot conclude that such recurring circumstances so often produce a coerced consent that we ought to find them inherently coercive. There is no "*Miranda* requirement" attending a simple request for permission to search.

AFFIRMED.

9