

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-145-CR

ROBERT TERRY TOBIN, JR.                                 APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Robert Terry Tobin, Jr. was convicted of possession of four grams or more but less than 200 grams of methamphetamine with intent to deliver.  In his sole point, Tobin argues that the trial court erred by denying his motion to suppress evidence because the evidence was seized after the arresting officer had completed the purpose for the traffic stop.  We will affirm.

---

[1] See TEX. R. APP. P. 47.4.

## I. FACTUAL BACKGROUND

On November 18, 2004, at approximately two o'clock in the morning, I.A. Bershiers, a Haltom City police officer, initiated a traffic stop after observing that Tobin's truck had a defective brake light. Officer Bershiers captured the events spanning from the initial traffic stop to Tobin's arrest on the police vehicle's dashboard video camera. A review of Officer Bershiers's testimony as well as the arrest video admitted into evidence at the hearing revealed that Officer Bershiers asked Tobin for his license and insurance, ran a background check, and, after determining that Tobin had no outstanding arrest warrants, asked Tobin to step out of the truck so that he could show him the defective brake light and ask for consent to search the truck. Officer Bershiers told Tobin that he was only going to give him a warning and that he would let him go. Officer Bershiers then gave Tobin back his driver's license. Immediately after returning the license, he asked Tobin if he could search the truck for any weapons or illegal substances. Tobin consented to the search.

Officer Bershiers then asked Tobin if he had any weapons on his person, and Tobin handed him a knife that he had in his pocket. He asked if he could search Tobin's person for any additional weapons, and it appears from the video that Tobin stated that he did not mind if he searched his person. Tobin voluntarily put his hands out by his side, and Officer Bershiers then told Tobin

2

to place his hands on his head and conducted a brief pat down.  After finding no additional weapons, Officer Bershiers told Tobin that he could put his hands down and that his police partner would "give [him] some conversation" while he searched the truck.  During the search of Tobin's truck, Officer Bershiers found a methamphetamine pipe and a substance that he believed to be methamphetamine.  Officer Bershiers then made the arrest.

## II.  MOTION TO SUPPRESS

Tobin argues that the trial court erred by denying his motion to suppress because the evidence seized from his truck was taken in violation of the Fourth Amendment of the United States Constitution and article 1, section 9 of the Texas Constitution.  *See* U.S. CONST. amend IV; TEX. CONST. art. 1, § 9.  We will only address whether Tobin's rights were violated under the United States Constitution because he fails to distinguish those rights from his rights under the Texas Constitution.  *See Dewberry v. State*, 4 S.W.3d 735, 743–44 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

### A.    Standards of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We give almost total deference to the trial court's rulings on (1)

3

questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652-53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id*.; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact

4

findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B.    Consensual Search

Tobin argues that Officer Bershiers had no articulable suspicion to justify a further detention after he had completed the initial purpose for the stop, that it was an "inherently coercive situation," and that his "so-called consent was not valid."[2]

A continued detention and search of a vehicle are reasonable when consent is given, even though no circumstances are present that would

---

[2]Tobin relies on *Davis v. State*, 947 S.W.2d 240 (Tex. Crim. App. 1997), to support his argument. However, *Davis* is inapposite because the appellant in that case twice refused to give consent to search his vehicle after the arresting officers had concluded the purpose for the initial traffic stop. 947 S.W.2d 240, 241 & n.1. The arresting officer in this case searched Tobin's vehicle only after Tobin verbally consented to the search. *See James v. State*, 102 S.W.3d 162, 173 (Tex. App.—Fort Worth 2003, pet. ref'd) (distinguishing *Davis* on similar facts).

5

constitute reasonable suspicion of any further criminal activity. *James v. State*, 102 S.W.3d 162, 173 (Tex. App.—Fort Worth 2003, pet. ref'd) (citing *Ohio v. Robinette*, 519 U.S. 39, 39–40, 117 S. Ct. 417, 420–21 (1996)). An officer may request consent to search a vehicle after a traffic stop and, if such consent is refused, the officer may not detain the occupants or vehicle further unless reasonable suspicion of some additional criminal activity exists. *Id*. Thus, reasonable suspicion is not required for a police officer to request consent to search an automobile after the reason for an initial stop is concluded as long as a message is not conveyed that compliance is required. *Id*.

Because Tobin consented to the search of his truck, there was no unlawful detention, as long as he voluntarily consented. *See id*. The federal constitution requires the State to prove the validity of the consent by a preponderance of the evidence, while the Texas Constitution requires the State to show by clear and convincing evidence that the consent was valid. *Guevara v. State*, 97 S.W.3d 579, 582 (Tex. Crim. App. 2003).

To be valid, a consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); *Allridge v. State,* 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). The issue is whether the surroundings and the words or actions of the officer and his associates

6

communicate the message of "We Who Must Be Obeyed." *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008).

Voluntary consent is not shown by a mere acquiescence to a claim of lawful authority; rather, whether consent was given voluntarily is a question of fact to be determined from the totality of the circumstances. *See Robinette*, 519 U.S. at 40, 117 S. Ct. at 421; *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). By reviewing the circumstances prior to the search, the reaction of the accused, and any other factor deemed relevant, a trial court can determine whether consent was given voluntarily. *Reasor,* 12 S.W.3d at 818.

We note that over the course of the case, Tobin has presented somewhat conflicting positions on the issue of his consent. Initially, on the first day of the hearing, Tobin's defense counsel stated that Tobin was not contesting the voluntariness of his consent. The following transaction occurred after the State attempted to elicit testimony from Officer Bershiers regarding Tobin's consent:

> [Defense]: Judge, we don't contest the voluntariness of the defendant's consent to search.
>
> [State]: Is counsel willing to stipulate to that?
>
> [Defense]: Sure. His consent was freely and voluntarily given, that consent, we don't contest that.
>
> [State]: Thank you.

7

At the conclusion of the hearing, the trial court allowed each party to submit supplemental briefs to aid the court in its decision. In his brief to the trial court, contrary to his position at the hearing, Tobin challenged the voluntariness of his custodial status, which is a relevant factor in determining the voluntariness of a defendant's consent. *See United States v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007), *cert. denied*, 127 U.S. 2899 (2007). Tobin stated that the detention "never transmuted into a consensual encounter between an officer and a citizen." He went on further to state that "[t]he officer place[d] a condition upon the defendant's release: a warning. Because the officer did not tell the defendant whether the warning would be verbal or written[,] it is unreasonable to think the defendant believed he was free to leave."

Similarly, Tobin asserts on appeal that his consent was involuntary because "arguably," Officer Bershiers was standing between him and the truck when he requested consent, intimating that he did not feel free to leave. The video belies any such interpretation. It is clear that Officer Bershiers stood next to Tobin, not between Tobin and the truck, when he asked for consent. There is no evidence from the video or otherwise that Officer Bershiers crowded Tobin or threatened him in any way with his body language.

8

Tobin also argues that Officer Bershiers created an "inherently coercive situation" in which a reasonable person would not have felt free to leave when, acting under the "color of police authority," he ordered Tobin to place his hands on his head and "made" him stand by the assisting officer during the search. These issues were addressed in the examination of Officer Bershiers, resulting in somewhat inconclusive testimony about the exact events that took place. A review of the video reveals the events with more particularity.

After Tobin gave consent to search the vehicle, Officer Bershiers asked Tobin if he had "weapons or anything like that" on his person, and Tobin handed him a knife that he had in his pocket. Officer Bershiers then asked Tobin if he could search his person for weapons. Tobin appears from the video to respond by saying, "No," that is, he did not mind if he searched his person for weapons. Tobin then voluntarily put his arms out to accommodate the search. Only after this transaction did Officer Bershiers tell Tobin to place his hands on his head for a brief pat-down. Further, Officer Bershiers did not order Tobin to stand by his partner. He first told Tobin that he could put his hands down following the frisk and then said, "[my partner will] stand there and give you some conversation . . . it will only take a minute." Officer Bershiers in fact testified that he did not command Tobin to stand by his partner. It is also worth noting that Tobin was very cooperative during this entire process and

9

showed no signs of nervousness or reluctance. Thus, after reviewing the encounter as described above, we do not view these actions, as Tobin urges us to do, as coercive orders. And, in consideration of the timing of all the events, we cannot say that these actions somehow vitiated Tobin's voluntary statement of consent given moments earlier.

Tobin asserts next that Officer Bershiers did not tell him that he could have refused consent. While this assertion is correct, this is only a factor to consider; the absence of such information does not automatically render the accused's consent involuntary. *Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002). Likewise, there is no requirement to inform a suspect he is free to leave after a lawful traffic stop. *Vargas v. State*, 18 S.W.3d 247, 252 n.1 (Tex. App.—Waco 2000, pet. ref'd) (citing *Robinette*, 519 U.S. at 39–40, 117 S. Ct. at 421). We note, however, that Tobin no longer contends that there were conditions on his release. Tobin now asserts that "[t]he record is clear that the officer's request to search was made after the completion of the routine traffic stop; after issuing a warning to [Tobin]; and after all routine matters incident to such a stop were completed." In any event, Officer Bershiers testified at the hearing that after he gave the license back to Tobin, Tobin was free to leave.

10

Additionally, Officer Bershiers did not convey a message through his words or actions that his request for consent could not be refused. *See Garcia-Cantu*, 253 S.W.3d at 243–44. The evidence demonstrates that Officer Bershiers never acted aggressively toward Tobin before or during his request for consent. Officer Bershiers never spoke to Tobin with a commanding or authoritative voice; instead, he addressed Tobin with a normal, conversational tone.

Lastly, the length of the detention was relatively brief and did not invalidate Tobin's consent. The initial traffic stop up to the point when Officer Bershiers handed Tobin his license lasted approximately seven minutes. And within seconds of handing Tobin back his license, Officer Bershiers asked Tobin if he could search the truck.

In sum, the record of the events leading up to the consent to search does not support a determination that Tobin's consent was invalid or that Officer Bershiers indicated that compliance with his request was required.[3] That is to

---

[3] Furthermore, Tobin stipulated to the trial court that his consent was voluntary. *See Velez v. State*, 240 S.W.3d 261, 265 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding that the State was bound by its stipulation at the suppression hearing that the appellant had standing to contest a police search); *see also Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005) ("[A] stipulation is a kind of judicial admission. . . . Judicial admissions . . . are formal concessions . . . or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need

11

say, in looking at all the evidence in the light most favorable to the trial court's ruling, we cannot say that Tobin's consent was coerced by either express or implicit means. *See Carmouche*, 10 S.W.3d at 331; *see also Robledo v. State*, 175 S.W.3d 508, 509–10 (Tex. App.—Amarillo 2005, no pet.) (holding that consent was not coerced when a police officer asked for the appellant's consent while the appellant was in the police car and despite the fact that the officer did not tell the appellant he could exit the police car and leave).

### C. Conclusion

An officer does not need reasonable suspicion to request consent after the stop has concluded. *James*, 102 S.W.3d at 173. Indeed, a police officer may approach a citizen without probable cause or even reasonable suspicion to ask questions or obtain consent to search. *Id*. Accordingly, we hold that because Tobin consented to the search, and to the extent that the voluntariness of his consent was not contested at the hearing and that coercion was not supported by the totality of the circumstances, any further detention and

---

for proof of the fact.").

subsequent search was not illegal.[4]  *See James*, 102 S.W.3d at 173.

Accordingly, we overrule Tobin's sole point.

### III. CONCLUSION

Having overruled Tobin's sole point on appeal, we affirm the trial court's

judgment.


DIXON W. HOLMAN
JUSTICE

PANEL:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  August 21, 2008

---

[4] Because we have held that Officer Bershiers did not need reasonable suspicion to ask for consent after the completion of the traffic stop, we do not need to address, as Tobin asserts, the causal connection between the consent and the alleged prior constitutional violation to determine whether the consent was an act of "free will" or the product of an illegal detention. *See United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir 1993).

13