COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-145-CR

 

 

ROBERT TERRY TOBIN, JR.                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Robert Terry Tobin,
Jr. was convicted of possession of four grams or more but less than 200 grams
of methamphetamine with intent to deliver. 
In his sole point, Tobin argues that the trial court erred by denying
his motion to suppress evidence because the evidence was seized after the
arresting officer had completed the purpose for the traffic stop.  We will affirm.








I. Factual Background

On November 18, 2004, at
approximately two o=clock in the
morning, I.A. Bershiers, a Haltom City police officer, initiated a traffic stop
after observing that Tobin=s truck had a defective brake light. 
Officer Bershiers captured the events spanning from the initial traffic
stop to Tobin=s arrest on
the police vehicle=s dashboard
video camera.  A review of Officer
Bershiers=s testimony
as well as the arrest video admitted into evidence at the hearing revealed that
Officer Bershiers asked Tobin for his license and insurance, ran a background
check, and, after determining that Tobin had no outstanding arrest warrants,
asked Tobin to step out of the truck so that he could show him the defective
brake light and ask for consent to search the truck.  Officer Bershiers told Tobin that he was only
going to give him a warning and that he would let him go.  Officer Bershiers then gave Tobin back his
driver=s license.  Immediately after
returning the license, he asked Tobin if he could search the truck for any
weapons or illegal substances.  Tobin
consented to the search.








Officer Bershiers then asked
Tobin if he had any weapons on his person, and Tobin handed him a knife that he
had in his pocket.  He asked if he could
search Tobin=s person for
any additional weapons, and it appears from the video that Tobin stated that he
did not mind if he searched his person. 
Tobin voluntarily put his hands out by his side, and Officer Bershiers
then told Tobin to place his hands on his head and conducted a brief pat
down.  After finding no additional
weapons, Officer Bershiers told Tobin that he could put his hands down and that
his police partner would Agive [him]
some conversation@ while he
searched the truck.  During the search of
Tobin=s truck, Officer Bershiers found a methamphetamine pipe and a
substance that he believed to be methamphetamine.  Officer Bershiers then made the arrest.

II.  Motion
to Suppress

Tobin argues that the trial
court erred by denying his motion to suppress because the evidence seized from
his truck was taken in violation of the Fourth Amendment of the United States
Constitution and article 1, section 9 of the Texas Constitution.  See U.S.
Const. amend IV; Tex. Const.
art. 1, ' 9.  We will only address
whether Tobin=s rights
were violated under the United States Constitution because he fails to
distinguish those rights from his rights under the Texas Constitution.  See Dewberry v. State, 4 S.W.3d 735,
743B44 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).

A.     Standards of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  We give
almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); Johnson v.
State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court=s rulings on
those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652‑53.








Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When, as here, the record is silent on the
reasons for the trial court=s ruling, or when there are no explicit fact findings and neither
party timely requested findings and conclusions from the trial court, we imply
the necessary fact findings that would support the trial court=s ruling if the evidence, viewed in the light most favorable to the
trial court=s ruling,
supports those findings.  Id.; see  Amador, 221 S.W.3d at 673; Wiede,
214 S.W.3d at 25.  We then review the
trial court=s legal
ruling de novo unless the implied fact findings supported by the record are
also dispositive of the legal ruling.  Kelly,
204 S.W.3d at 819.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  State v. Stevens, 235
S.W.3d 736, 740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004). 

B.     Consensual Search

Tobin argues that Officer
Bershiers had no articulable suspicion to justify a further detention after he
had completed the initial purpose for the stop, that it was an Ainherently coercive situation,@ and that his Aso-called
consent was not valid.@[2]








A continued detention and
search of a vehicle are reasonable when consent is given, even though no
circumstances are present that would constitute reasonable suspicion of any
further criminal activity.  James v.
State, 102 S.W.3d 162, 173 (Tex. App.CFort Worth 2003, pet. ref=d) (citing Ohio v. Robinette, 519 U.S. 39, 39B40, 117 S. Ct. 417, 420B21 (1996)).  An officer may
request consent to search a vehicle after a traffic stop and, if such consent
is refused, the officer may not detain the occupants or vehicle further unless
reasonable suspicion of some additional criminal activity exists.  Id.  Thus, reasonable suspicion is not required for
a police officer to request consent to search an automobile after the reason
for an initial stop is concluded as long as a message is not conveyed that
compliance is required.  Id.

Because Tobin consented to the
search of his truck, there was no unlawful detention, as long as he voluntarily
consented.  See id.  The federal constitution
requires the State to prove the validity of the consent by a preponderance of
the evidence, while the Texas Constitution requires the State to show by clear
and convincing evidence that the consent was valid.  Guevara v. State, 97 S.W.3d 579, 582
(Tex. Crim. App. 2003). 








To be valid, a consent to
search must be positive and unequivocal and must not be the product of duress
or coercion, either express or implied.  Carmouche
v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000); Allridge v. State,
850 S.W.2d 471, 493 (Tex. Crim. App. 1991). 
The issue is whether the surroundings and the words or actions of the
officer and his associates communicate the message of AWe Who Must Be Obeyed.@  State v. Garcia‑Cantu,
253 S.W.3d 236, 243 (Tex. Crim. App. 2008).

Voluntary consent is not
shown by a mere acquiescence to a claim of lawful authority; rather, whether
consent was given voluntarily is a question of fact to be determined from the
totality of the circumstances.  See
Robinette, 519 U.S. at 40, 117 S. Ct. at 421; Reasor v. State, 12
S.W.3d 813, 818 (Tex. Crim. App. 2000). 
By reviewing the circumstances prior to the search, the reaction of the
accused, and any other factor deemed relevant, a trial court can determine
whether consent was given voluntarily.  Reasor,
12 S.W.3d at 818.

We note that over the course
of the case, Tobin has presented somewhat conflicting positions on the issue of
his consent.  Initially, on the first day
of the hearing, Tobin=s defense
counsel stated that Tobin was not contesting the voluntariness of his
consent.  The following transaction
occurred after the State attempted to elicit testimony from Officer Bershiers
regarding Tobin=s consent:

[Defense]:   Judge, we don=t
contest the voluntariness of the defendant=s consent to search.

  

[State]:      Is counsel willing to stipulate to that?

 

[Defense]:   Sure. 
His consent was freely and voluntarily given, that consent, we don=t
contest that.

 

[State]:      Thank you.

 








At the conclusion of the
hearing, the trial court allowed each party to submit supplemental briefs to
aid the court in its decision.  In his
brief to the trial court, contrary to his position at the hearing, Tobin
challenged the voluntariness of his custodial status, which is a relevant
factor in determining the voluntariness of a defendant=s consent.  See United States
v. Arias-Robles, 477 F.3d 245, 248 (5th Cir. 2007), cert. denied,
127 U.S. 2899 (2007).  Tobin stated that
the detention Anever
transmuted into a consensual encounter between an officer and a citizen.@  He went on further to state
that A[t]he officer place[d] a condition upon the defendant=s release: a warning.  Because
the officer did not tell the defendant whether the warning would be verbal or
written[,] it is unreasonable to think the defendant believed he was free to
leave.@

Similarly, Tobin asserts on
appeal that his consent was involuntary because Aarguably,@ Officer
Bershiers was standing between him and the truck when he requested consent,
intimating that he did not feel free to leave. 
The video belies any such interpretation.  It is clear that Officer Bershiers stood next
to Tobin, not between Tobin and the truck, when he asked for consent.  There is no evidence from the video or
otherwise that Officer Bershiers crowded Tobin or threatened him in any way
with his body language.








Tobin also argues that
Officer Bershiers created an Ainherently coercive situation@ in which a reasonable person would not have felt free to leave when,
acting under the Acolor of
police authority,@ he ordered
Tobin to place his hands on his head and Amade@ him stand
by the assisting officer during the search. These issues were addressed in the
examination of Officer Bershiers, resulting in somewhat inconclusive testimony
about the exact events that took place. 
A review of the video reveals the events with more particularity.








After Tobin gave consent to
search the vehicle, Officer Bershiers asked Tobin if he had Aweapons or anything like that@ on his person, and Tobin handed him a knife that he had in his pocket.  Officer Bershiers then asked Tobin if he
could search his person for weapons. 
Tobin appears from the video to respond by saying, ANo,@  that is, he did not mind if he searched his
person for weapons.  Tobin then
voluntarily put his arms out to accommodate the search.  Only after this transaction did Officer
Bershiers tell Tobin to place his hands on his head for a brief pat-down.  Further, Officer Bershiers did not order
Tobin to stand by his partner.  He first
told Tobin that he could put his hands down following the frisk and then said, A[my partner will] stand there and give you some conversation . . .
it will only take a minute.@  Officer Bershiers in fact
testified that he did not command Tobin to stand by his partner.  It is also worth noting that Tobin was very
cooperative during this entire process and showed no signs of nervousness or
reluctance.  Thus, after reviewing the
encounter as described above, we do not view these actions, as Tobin urges us
to do, as coercive orders.  And, in
consideration of the timing of all the events, we cannot say that these actions
somehow vitiated Tobin=s voluntary
statement of consent given moments earlier.

Tobin asserts next that
Officer Bershiers did not tell him that he could have refused consent.  While this assertion is correct, this is only
a factor to consider; the absence of such information does not automatically
render the accused=s consent
involuntary.  Johnson v. State, 68
S.W.3d 644, 653 (Tex. Crim. App. 2002). 
Likewise, there is no requirement to inform a suspect he is free to
leave after a lawful traffic stop.  Vargas
v. State, 18 S.W.3d 247, 252 n.1 (Tex. App.CWaco 2000, pet. ref=d) (citing Robinette, 519 U.S. at 39B40, 117 S. Ct. at 421).  We
note, however, that Tobin no longer contends that there were conditions on his
release. Tobin now asserts that A[t]he record is clear that the officer=s request to search was made after the completion of the routine
traffic stop; after issuing a warning to [Tobin]; and after all routine matters
incident to such a stop were completed.@  In any event, Officer
Bershiers testified at the hearing that after he gave the license back to
Tobin, Tobin was free to leave. 








Additionally, Officer
Bershiers did not convey a message through his words or actions that his
request for consent could not be refused. 
See Garcia‑Cantu, 253 S.W.3d at 243B44.  The evidence demonstrates
that Officer Bershiers never acted aggressively toward Tobin before or during
his request for consent.  Officer
Bershiers never spoke to Tobin with a commanding or authoritative voice;
instead, he addressed Tobin with a normal, conversational tone.

Lastly, the length of the
detention was relatively brief and did not invalidate Tobin=s consent.  The initial traffic
stop up to the point when Officer Bershiers handed Tobin his license lasted
approximately seven minutes.  And within
seconds of handing Tobin back his license, Officer Bershiers asked Tobin if he
could search the truck. 








In sum, the record of the
events leading up to the consent to search does not support a determination
that Tobin=s consent
was invalid or that Officer Bershiers indicated that compliance with his
request was required.[3]  That is to say, in looking at all the
evidence in the light most favorable to the trial court=s ruling, we cannot say that Tobin=s consent was coerced by either express or implicit means.  See Carmouche, 10 S.W.3d at
331; see also Robledo v. State, 175 S.W.3d 508, 509B10 (Tex. App.CAmarillo
2005, no pet.) (holding that consent was not coerced when a police officer
asked for the appellant=s consent
while the appellant was in the police car and despite the fact that the officer
did not tell the appellant he could exit the police car and leave). 

C.     Conclusion 








An officer does not need
reasonable suspicion to request consent after the stop has concluded.  James, 102 S.W.3d at 173.  Indeed, a police officer may approach a
citizen without probable cause or even reasonable suspicion to ask questions or
obtain consent to search.  Id.  Accordingly, we hold that because Tobin
consented to the search, and to the extent that the voluntariness of his
consent was not contested at the hearing and that coercion was not supported by
the totality of the circumstances, any further detention and subsequent search
was not illegal.[4]  See James, 102 S.W.3d at 173.  Accordingly, we overrule Tobin=s sole point.

III. Conclusion

Having overruled Tobin=s sole point on appeal, we affirm the trial court=s judgment.

 

DIXON W. HOLMAN

JUSTICE

 

PANEL:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 21, 2008

 











[1]See Tex. R.
App. P. 47.4.





[2]Tobin relies on Davis v. State,
947 S.W.2d 240 (Tex. Crim. App. 1997), to support his argument.  However, Davis is inapposite because
the appellant in that case twice refused to give consent to search his vehicle
after the arresting officers had concluded the purpose for the initial traffic
stop.  947 S.W.2d 240, 241 & n.1.  The arresting officer in this case searched
Tobin=s vehicle only after Tobin verbally
consented to the search.  See James v.
State, 102 S.W.3d 162, 173 (Tex. App.CFort Worth 2003, pet. ref=d) (distinguishing Davis on
similar facts).





[3]Furthermore,
Tobin stipulated to the trial court that his consent was voluntary.  See Velez v. State, 240 S.W.3d 261,
265 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d) (holding that the State
was bound by its stipulation at the suppression hearing that the appellant had
standing to contest a police search); see also Bryant v. State, 187
S.W.3d 397, 400 (Tex. Crim. App. 2005) (A[A] stipulation is a kind of
judicial admission. . . . 
Judicial admissions . . . are formal concessions
. . . or stipulations by a party or counsel that have the effect of
withdrawing a fact from issue and dispensing wholly with the need for proof of
the fact.@).  





[4]Because we have held that Officer
Bershiers did not need reasonable suspicion to ask for consent after the
completion of the traffic stop, we do not need to address, as Tobin asserts,
the causal connection between the consent and the alleged prior constitutional
violation to determine whether the consent was an act of Afree will@ or the product of an illegal
detention.  See United States v.
Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir 1993).