

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00225-CR

FRANK PHILLIP MCNABB AKA FRANK MCNABB, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR18-0455; Honorable Graham Quisenberry, Presiding

August 12, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Frank Phillip McNabb, appeals from his conviction by jury of the offense of possession of methamphetamine, with intent to deliver, in an amount more than four grams but less than 200 grams.[1] Following the entry of a plea of "true" to two enhancement allegations, the jury assessed his sentence at confinement for a period of

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2017).

sixty-five years.[2]  Through one issue, Appellant contends the trial court erred when it denied his motion to suppress because the search leading to his arrest was unreasonable.[3]

### BACKGROUND

In mid-March 2018, Parker County Sheriff's Deputy John Vaughn pulled into an Allsup's convenience store on Highway 199.  He saw a pickup truck there with a man standing outside of it, looking as if he was going to get into it.  Instead, the man walked to the back of his truck and began "messing with" a rear light, possibly "trying to get it to function."  Deputy Vaughn noticed that as soon as he went into the store, the man got into his truck and left.  Deputy Vaughn had observed that the truck did not have a front license plate, so he left the store and decided to follow the truck as it traveled westbound.  After a short distance, he initiated a traffic stop and spoke with the male driver and female passenger.  The first thing Deputy Vaughn noticed was the female passenger "appeared to be very nervous."  He identified the driver as Appellant and asked him to exit the truck.  He took Appellant's driver's license and returned to his patrol vehicle to verify if the truck was properly insured.  He returned, telling Appellant he was going to give him verbal warnings for traffic violations.

---

[2] This is a first degree felony punishable by imprisonment for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000.  TEX. PENAL CODE ANN. § 12.32 (West 2019).  The indictment also included three enhancement paragraphs setting forth Appellant's previous final felony convictions.  Appellant pleaded "true" to each paragraph.  TEX. PENAL CODE ANN. § 12.42 (providing penalties for repeat and habitual felony offenders).

[3] Originally appealed to the Second Court of Appeals, sitting in Fort Worth, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Second Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  See TEX. R. APP. P. 41.3.

When Deputy Vaughn conducted a search of the license plate, he gained information indicating the truck "was previously involved in a burglary of a habitation where the driver or suspect got away, and they were never able to identify them." When asked about the truck, Appellant said he had only had it for about a month and that the previous owner was in jail.[4] Deputy Vaughn then told Appellant there was "one more thing I want to talk to you about before I let you go." Shortly thereafter, he asked for and received Appellant's consent to search the truck. During the search, he found approximately fifty-four grams of methamphetamine underneath the bench seat. At that time, he arrested Appellant and his passenger.

Prior to trial, Appellant filed a motion to suppress the methamphetamine discovered by Deputy Vaughn. At the suppression hearing, Deputy Vaughn and Appellant both testified. After listening to the testimony and the arguments of the prosecutor and defense counsel, the trial court denied the motion. Appellant re-urged his motion during trial and the court again denied his motion. Following his conviction, he timely filed his notice of appeal contesting the trial court's ruling on his motion to suppress.

**ANALYSIS**

Through his sole appellate issue, Appellant contends the trial court erred in denying his motion to suppress because the search was unreasonable. As grounds for his contention, Appellant sets forth the following: (1) Deputy Vaughn exceeded the scope and duration of the initial traffic stop; (2) Appellant did not feel free to leave the traffic stop because Deputy Vaughn had told him "one more thing I want to talk to you about before

---

[4] Deputy Vaughn testified at trial that he was aware the previous owner of the truck was "a meth user."

I let you go"; (3) Appellant was detained for Fourth Amendment purposes; and (4) before Appellant gave consent for the search of the vehicle, the detention had already been unlawfully prolonged beyond the conclusion of its legitimate purposes.

STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018) (citations omitted). In doing so, we employ a bifurcated standard of review. *Id.*; *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Consequently, we give almost total deference to the trial court's rulings on questions of historical fact, even if the trial court's determination of those facts were not based on an evaluation of credibility and demeanor, and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673. When application-of-law-to-fact questions do not turn on credibility and demeanor of witnesses, however, we review the trial court's rulings on those questions *de novo. Id.*

Additionally, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Finally, when the trial court does not enter findings of fact, we must uphold the trial court's ruling if it is

4

supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

### SEARCH AND SEIZURE

The Fourth Amendment to the United States Constitution protects an individual against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct and satisfies this burden by establishing that a search or seizure occurred without a warrant.[5] *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted in a reasonable manner. *Id*. at 672-73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

An investigative detention involves detaining a person reasonably suspected of criminal activity in order to determine the identity of that person or to momentarily maintain the status quo in order to garner information relevant to the detention. *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). An investigative detention is reasonable, and thus constitutionally justified, if (1) the officer's action was justified at the detention's inception and (2) the detention was reasonably related in scope to the circumstances that justified the interference in the first place. *Id*. For the officer's initial action to be justified under the first *Terry* prong, we ask whether there existed specific, articulable facts that, taken together with rational inferences drawn from those facts,

---

[5] Here, the parties agreed this was a warrantless search.

5

reasonably warranted that intrusion. *Id.* at 21. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to a crime. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

Under the second *Terry* prong, an investigative detention must be temporary and last no longer than is reasonably necessary to effectuate the purpose of the stop. *See Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The scope of the seizure must also be restricted to those activities which are reasonably necessary to fulfill the purpose of the search. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). *See United States v. Hensley*, 469 U.S. 221, 235, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985). With respect to an investigative detention associated with a suspected traffic offense, once the reason for the traffic stop is resolved, the stop may not then be used as "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (citation omitted). Instead, reasonable suspicion that another offense was or is being committed is required in order to prolong the detention. *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd). To prolong a traffic detention, the officer must be able to point to specific articulable facts which, based on his experience and personal knowledge coupled with logical inferences drawn from these facts, warrant the additional intrusion. *Davis*, 947 S.W.2d at 244. An officer is entitled to rely on all the information obtained during his contact with a motorist in developing the articulable facts justifying continued detention. *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth

6

1998, pet. ref'd). A seizure that is reasonable at its inception may still violate the Fourth Amendment if it is excessive in intensity or scope. *Davis*, 947 S.W.2d at 243.

Here, Appellant argues the second *Terry* prong was violated, i.e., he contends that by the time Deputy Vaughn requested consent to search the truck, the scope and duration of the traffic stop had already exceeded that which was reasonable. Appellant does not claim his original detention, the traffic stop, was illegal or that he did not voluntarily consent to the search.[6]

Consent to search operates as an exception to the Fourth Amendment's warrant requirement. *Caraway v. State*, 255 S.W.3d 302, 310 (Tex. App.—Eastland 2008, no pet.) (citations omitted). Under Texas case law, an officer is permitted to "solicit voluntary consent to search the vehicle once the purpose of a traffic stop has been effectuated" as long as the officer does not convey to the individual that compliance is required. *Robledo v. State*, 175 S.W.3d 508, 510 (Tex. App.—Amarillo 2005, no pet.); *James v. State*, 102 S.W.3d 162, 173 (Tex. App.—Fort Worth, pet. ref'd). Requesting that consent is not an unlawful seizure, and "neither probable cause nor reasonable suspicion is required for the officer to ask." *Robledo*, 175 S.W.3d at 510 (citation omitted). Furthermore, an officer is not required to inform the individual that he is free to leave after the purpose of the stop is completed. *Id.* (citation omitted). Moreover, if the individual grants consent to search, a search conducted pursuant to that consent is permissible under the Fourth Amendment. *Id.*

---

[6] We note Appellant testified to some confusion regarding his consent. While he eventually admitted he provided to Deputy Vaughn consent to search the truck, he maintains that his consent was involuntary because it was obtained after the detention had exceeded its reasonable scope.

Here, Deputy Vaughn initially stopped Appellant because his truck did not have a front license plate. During the traffic stop and prior to issuing verbal warnings, Deputy Vaughn checked the validity of Appellant's insurance and could not find it was valid. He also noted a license plate bulb on Appellant's truck was not functioning properly. In addition, he checked the truck's license plate and discovered the truck was linked to a burglary of a habitation several months before. After obtaining this information, he informed Appellant he would receive a verbal warning for the traffic violations.

During the motion to suppress hearing, Deputy Vaughn admitted that by the time he asked for and obtained consent to search the truck, the purpose of the stop had been effectuated. He also admitted he had no reasonable suspicion that any crime was being committed and readily acknowledged his request for consent was a fishing expedition.[7] But, immediately after giving Appellant a verbal warning regarding the traffic violations, Deputy Vaughn told Appellant he wanted to talk to him about something. He then explained that in the surrounding area, police receive a lot of calls and reports about burglaries and car thefts and thus, officers try to take a look at the vehicles of anyone with whom they come into contact. It is clear from the record that very little time had passed from the time the purpose of the stop was effectuated, i.e., when Appellant was given the verbal warnings for the traffic violations, to the time Deputy Vaughn requested and received consent to search the truck. Therefore, the effectuation of the stop and the request for consent were "rather contemporaneous" as was the case in *Robledo*.

---

[7] At trial, Deputy Vaughn said a fishing expedition and a potential investigation "could be the same thing."

Further, the video from Deputy Vaughn's body camera was admitted into evidence. Appellant provided to him consent to search the truck very quickly after receiving the verbal warnings and did so without equivocation. Further, there is no indication of any show of force or coercion utilized to obtain that consent. We note also that Deputy Vaughn agreed Appellant was free to leave at that point, that there was no threatening or harmful coercion used on Appellant to obtain his consent. The record further shows that Deputy Vaughn would not have searched the truck if Appellant had refused consent.

At the suppression hearing, Appellant did testify that he "always thought I had to" give an officer consent to search his vehicle; however, he acknowledged Deputy Vaughn did not say he had to do so. Appellant further admitted he was "not a stranger to the criminal justice system" and had been through it "many times." While Appellant's testimony was freely and voluntarily given, the trial court was not required to believe his testimony. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (a fact finder is entitled to judge the credibility of a witness and may choose to believe all, some, or none of the testimony presented by a witness).

Given the circumstances of this case, the trial court was within its discretion to find Vaugh's search of Appellant's truck was permissible under the Fourth Amendment based on Appellant's voluntary consent. Consequently, the trial court did not abuse its discretion in denying his motion to suppress. Accordingly, we resolve Appellant's sole appellate issue against him.

**CONCLUSION**

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.


Patrick A. Pirtle
Justice


Do not publish.